RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0183p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DIANE M. ZIRNHELT,
          *Plaintiff-Appellant/Cross-Appellee,*

          *v.*

MICHIGAN CONSOLIDATED GAS COMPANY, et al.,
          *Defendants-Appellees/Cross-Appellants.*

Nos. 06-2540; 07-1172

>

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-70619—George C. Steeh, District Judge.

Argued: March 13, 2008

Decided and Filed: May 16, 2008

Before: MOORE, GILMAN, and SUTTON, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Peter J. Zirnhelt, ZIRNHELT & BOWRON, Traverse City, Michigan, for Appellant. Michael A. Alaimo, MILLER, CANFIELD, PADDOCK & STONE, Detroit, Michigan, for Appellees. **ON BRIEF:** Peter J. Zirnhelt, ZIRNHELT & BOWRON, Traverse City, Michigan, for Appellant. Michael A. Alaimo, MILLER, CANFIELD, PADDOCK & STONE, Detroit, Michigan, for Appellees.

─────────────────

## OPINION

─────────────────

     SUTTON, Circuit Judge. In this pension-benefits case, Diane Zirnhelt argues that the district court erred in (1) upholding the company's denial of benefits, (2) denying her motion to amend her complaint to add an equitable-estoppel claim, (3) dismissing her breach-of-fiduciary-duty claim and (4) awarding her just $10,500 based on the company's failure to provide her with pension plan documents in a timely manner. For its part, the company argues (in its cross appeal) that the district court should not have imposed any monetary penalty. We affirm.

I.

     Born in March 1947, Diane Zirnhelt worked for Michigan Consolidated Gas from June 1965, when she was 18, to August 1977, when she was 30.

In 2000, when she was 53, Zirnhelt asked the company about her eligibility for pension benefits based on her earlier employment. In response, the company sent Zirnhelt a copy of the "Retirement Plan in effect as of the date [her employment] terminated" and told her that, "[i]n accordance with [the] Plan Document, . . . Ms. Zirnhelt would have had to work until April, 1979 to have any Vested/Retirement Benefits" because the plan required 10 years of service, excluding those rendered before reaching the age of "the majority (21)." JA 684. Because Zirnhelt did not meet the plan's 10-years-of-service requirement, the company explained, she was not eligible for benefits.

In February 2004, Zirnhelt filed a complaint under ERISA against the company, the plan and the plan administrator in federal court, seeking (1) a declaration that she is entitled to benefits under the plan and (2) damages for the plan administrator's failure to provide her with requested plan documents in a timely manner. In accordance with a stipulated order, Zirnhelt exhausted her administrative remedies (without success), and the company provided Zirnhelt with the requested plan documents. In November 2005, Zirnhelt sought permission to amend her complaint to add an equitable-estoppel claim, but the court denied the motion, concluding that the amendment was futile because the estoppel claim "would not survive a motion to dismiss." JA 364. In July 2006, she filed a second complaint, which added a fiduciary-breach claim and which the court consolidated with the first complaint.

The court rejected Zirnhelt's benefits claim and dismissed her fiduciary-breach claim. At the same time, the court awarded Zirnhelt $10,500 based on the plan administrator's failure to provide her with several plan documents in a timely manner. Both sides appealed.

II.

A.

Zirnhelt claims that the district court erred in upholding the company's decision to deny her claim for pension benefits. In doing so, she concedes that our task (like the district court's task) is to determine whether the benefits committee's decision was arbitrary and capricious. *See Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 427 (6th Cir. 2007).

The language of the plan supports the committee's decision. Article 11 of the plan says:

A participant who ceases to be a participant upon termination of his employment for any reason other than death or retirement . . . shall have the following rights:

(A) If such participant shall have completed ten (10) Years of Service at the date of such termination of employment, he shall be entitled to [receive certain benefits].

(B) If such participant shall not have completed ten (10) Years of Service at the date of such termination of employment, he shall not be entitled to receive any annuity or any other distribution or payment under the Plan unless he is a contributing participant . . . ."

JA 537–38. Zirnhelt does not contend that she was a "contributing participant." That leaves the question whether she had "ten (10) Years of Service at the date of [her] termination of employment." To answer that question, we look to Article 2, which defines "Years of Service" as:

The sum of

(a) an employee's Years of Prior Service,

(b) each 12-month period, beginning after December 31, 1974 on an employee's Anniversary Date, during which the employee shall have completed 1,000 or more Hours of Employment with one or more participating employers, associate companies and predecessor companies, and

(c) a proportional Year of Service for any period of less than 12 months between December 31, 1974 and an employee's first Anniversary Date thereafter, such proportional Year of Service to be determined under uniform rules adopted by the Committee in accordance with regulations,

but excluding any Years of Service completed before an employee attains age 22.

JA 489.

Because Zirnhelt did not turn 22 until March 1969, she needed ten years of service from that date forward to qualify for pension benefits under the plan. Unfortunately for Zirnhelt, she worked just eight years and five months beyond that date—until August 1977—meaning that she did not have "ten (10) Years of Service at the date of [her] termination." Because the benefits committee followed the language of the plan in denying Zirnhelt's claim for benefits, its decision necessarily was not arbitrary and capricious. *See McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003).

That is all well and good, Zirnhelt responds, so long as the committee relied on the right version of the plan. But that is not the case, she claims: The company gave her a different copy of the plan, one that defined "Years of Service" as:

The sum of

(a) an employee's Years of Prior Service,

(b) each 12-month period, beginning after December 31, 1974 on an employee's Anniversary Date, during which the employee shall have completed 1,000 or more Hours of Employment with one or more participating employers, associate companies and predecessor companies, and

(c) a proportional Year of Service for any period of less than 12 months between December 31, 1974 and an employee's first Anniversary Date thereafter, such proportional Year of Service to be determined under uniform rules adopted by the Committee in accordance with regulations, *but excluding any Years of Service completed before an employee attains age 22.*

JA 29 (emphasis added). Unlike the company's version of the plan, Zirnhelt's copy of the plan places the age-22 clause within subsection (c) and, according to Zirnhelt, confines the limitation to that clause.

The committee did not exceed its discretion in rejecting this argument and in relying on the company's version of the plan. No one within the company could verify Zirnhelt's version of the plan, and indeed, according to the committee, Zirnhelt's version appeared to have been altered by someone outside the company. As the committee explained, Martha Klyce, the individual in the company's benefits department who allegedly provided Zirnhelt with the copy in question, stated in her affidavit that "the copy of the Retirement Plan that [she] provided [Zirnhelt's attorney] is not

the one attached to [Zirnhelt's] Complaint" and that she did not recognize Zirnhelt's version "as a document that has ever been used in the administration of the Retirement Plan."  JA 731.

But even if we were to credit Zirnhelt's version of the plan, that would not help her.  The only difference between the competing versions of the plan is the placement of the age-22 clause, not its wording.  Zirnhelt claims that the placement of the age-22 clause directly at the end of subsection (c), as opposed to on the next line of the page, means that it must apply only to that clause.  While that is one possibility, it is not the only possibility.  And the problem with Zirnhelt's possibility is that it makes no identifiable sense.  Subsection (c) permits employees to obtain credit for "proportional" years of service and gives the committee authority to create uniform rules for computing them.  Why that subsection, and that subsection alone, would limit eligibility to full "Years of Service" earned after age 22 is never explained.  Nor can we think of any tenable reason why the age-22 clause would apply only to this subsection, as opposed to all three of them.  Nor for that matter could Zirnhelt—at least as evidenced by her appellate briefs and by her inability to give an explanation for this proposed construction of the plan at oral argument.  Nor does ERISA provide any basis for drawing such a distinction.  In 1977, ERISA provided that a plan, "[i]n computing the period of service under the plan for purposes of determining the nonforfeitable percentage" of benefits to which a participant is entitled, may "disregard[] years of service before age 22," yet never said anything about applying such a restriction just to the calculation of *proportional* years of service.  29 U.S.C. § 1053(b)(1)(A) (1977), *amended by* Pub. L. No. 98-397, 98 Stat. 1426 (1984) (amending § 1053(b)(1)(A) "by striking out '22' and inserting in lieu thereof '18'").

In challenging a benefits committee's interpretation of pension plan language, a claimant does not gain traction simply by proposing another interpretation—any interpretation—of the plan.  To be worthy of credence and to show material ambiguity in the language of a plan, the competing interpretation must be a plausible one—something Zirnhelt's proposed interpretation is not.  *See McDonald*, 347 F.3d at 169 (requiring an interpretation of a plan to be "rational" in order for a court to uphold a plan administrator's acceptance of it); *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir. 1994) (explaining that "the language [of a plan] is ambiguous if it is subject to two *reasonable* interpretations") (emphasis added); *see also Smith v. ABS Indus., Inc.*, 890 F.2d 841, 847 n.1 (6th Cir. 1989) ("[B]oth parties have offered *plausible* interpretations of the agreement drawn from the contractual language itself [which] demonstrates that the provision is ambiguous.") (emphasis added and alterations in original).

Nor, it bears adding, does any of the extrinsic evidence introduced by either party support the distinction Zirnhelt proposes or provide any basis for drawing such a distinction.  While Zirnhelt relies on extrinsic evidence, she does so to make a different argument—that the company never had an age-22 clause at all.  She notes that a portion of the summary plan description of the pension plan contains a general discussion of pre-1975 eligibility requirements and yet does not say anything about an age-22 exclusion.  That is true.  But the benefits section of that same summary—the section entitled "Employee's Rights if Employment is Terminated Prior to Qualifying for Early Retirement"—directly addresses Zirnhelt's situation and supports the committee's interpretation.  "In the event an employee terminates employment prior to qualifying for early retirement," it says, "he still has certain rights under the plan.  Upon the completion of 10 years of service *after age 22* such an employee may receive [certain pension benefits]."  JA 578 (emphasis added).  The most that can be said about Zirnhelt's reliance on the summary plan description is that it perhaps introduces an ambiguity about the meaning of the summary.  Under our precedent, however, ambiguity in a summary plan description cannot trump clear language in the plan.  Indeed, Zirnhelt cites "no authority, and we have found none, where a plan summary which is merely ambiguous trumps unambiguous plan language."  *Lake v. Metro. Life Ins. Co.*, 73 F.3d 1372, 1379 (6th Cir. 1996); *see also Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 938 (6th Cir. 1996) ("[U]nder the law of this circuit, language in a plan summary that is merely ambiguous should not be permitted to trump unambiguous language in the plan itself . . . .").

That conclusion makes particular sense here for an independent reason. One of Zirnhelt's contentions is that she did not receive the summary plan description until *after* she filed her complaint in this case. That allegation undermines any suggestion that she reasonably relied on the same plan summary, as is required. *See Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136–37 (6th Cir. 1988) (holding that an unambiguous summary plan trumped an ambiguous plan because, among other reasons, the participant reasonably relied on the summary).

B.

Zirnhelt next contends that the district court abused its discretion in denying her motion to amend her complaint to add an equitable-estoppel claim. We disagree. Even assuming for the sake of argument that equitable estoppel applies to *pension* plans, a matter this court has yet to decide, *see Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998) (en banc), the "[p]rinciples of estoppel . . . cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions," *id.* at 404; *see also Marks v. Newcourt Credit Group*, 342 F.3d 444, 456 (6th Cir. 2003). In view of this precedent and in view of our conclusion that the relevant plan language is unambiguous, the district court did not abuse its discretion in denying Zirnhelt's motion to amend on the ground that the amendment would have been futile.

C.

Zirnhelt next challenges the district court's dismissal of her fiduciary-breach claim against the company. Under ERISA, the victim of an alleged fiduciary breach "normally has six years" to bring her claim, though "this period may be shortened to three years when the victim had actual knowledge of the breach or violation." *Wright v. Heyne*, 349 F.3d 321, 327 (6th Cir. 2003) (internal quotation marks omitted); *see also* 29 U.S.C. § 1113. In determining when the limitations clock starts under the actual-knowledge prong, we look to the "plaintiff's actual knowledge of the underlying conduct giving rise to the alleged violation that is required, rather than the knowledge that the underlying conduct violates ERISA." *Wright*, 349 F.3d at 331.

This claim fails, as an initial matter, under the six-year limitations period. According to Zirnhelt, the company failed to provide her with certain plan documents and thus failed to inform her accurately of the plan's vesting requirements during her employment with the company. If she "had . . . been properly informed of the Plan provisions," she says, "she could have made an informed and knowing decision [regarding] when to leave her employment with [the company] and insure that she had vested retirement benefits." JA 124. Under this theory, the underlying alleged misconduct necessarily occurred between 1965 and 1977, after which the company could not have cured any breach because, by then, the harm had been done: Zirnhelt had left the company without ten years of qualifying service. If we start the clock on this basis, the claim is late because she did not file it until 2006, over twenty years after the six-year limitations period expired.

Her claim also fails under the three-year limitations period triggered by actual knowledge of the underlying misconduct. Zirnhelt surely had actual knowledge of the underlying conduct giving rise to the alleged breach no later than August 2000. By then, she knew that the company had failed to provide her with certain documents during her employment, and she was aware that the company had allegedly misinformed her about the plan's vesting requirements during her employment. She admits as much in her opening appellate brief. *See* Br. at 33 ("The second Complaint alleged that Plaintiff was always of the understanding, until she was notified to the contrary on August 10, 2000, that after ten (10) years of service she was entitled to receive retirement benefits under the Plan."). And her second complaint is to similar effect. *See* JA 117 ("[I]t was not until August 10, 2000, that [she] was advised that she had no vested rights to

retirement benefits."). Yet she did not file her second complaint until 2006, well more than three years later. The "actual knowledge" provision of § 1113 thus bars her claim as well.

Zirnhelt contends that the limitations period should be six years and that it should run from her actual discovery of the breach in view of the statute's caveat for fraud or concealment by the company. *See* 29 U.S.C. § 1113 (stating that, "in the case of fraud or concealment," the statute of limitations expires "six years after the date of discovery of [the] breach or violation"). That contention fails, however, because this is not a "case of fraud or concealment." *Id.* Even assuming that Zirnhelt's version of the plan came from the company, the company's act of providing that document could not have been an act of fraud or concealment because, as we have shown, that version of the plan in operation is no different from the company's version, as both exclude Zirnhelt's years of service before age 22. There also is no basis for concluding that the company's subsequent failure to provide Zirnhelt with certain requested documents was an act of fraud or concealment. By the time the company had failed to provide the requested documents to Zirnhelt, it not only had informed her on multiple occasions that she failed to satisfy the plan's vesting requirements, but it also, at least according to Zirnhelt, had provided her with the version of the plan document upon which she relies. The company, in short, did not use fraud or concealment to hide any alleged breach.

D.

That brings us to the district court's imposition of $10,500 in civil penalties against the company for its failure to satisfy Zirnhelt's written request for plan information in a timely manner—a decision that apparently satisfied neither party. As Zirnhelt sees it, the amount was too small: It should have been $39,400 because 394 days passed between the ERISA-imposed deadline for providing the documents and Zirnhelt's receipt of them. As the company sees it, the amount was too large: It should have been zero because Zirnhelt was not a "participant" and thus was not entitled to the information in the first place.

ERISA says that an "administrator shall, upon written request of any participant or beneficiary, furnish a copy [of certain plan documents]." 29 U.S.C. § 1024(b)(4). "Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the . . . participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal." *Id.* § 1132(c)(1); *see also id.* § 1132(a) ("A civil action may be brought . . . by a participant or beneficiary . . . for the relief provided in subsection (c) of this section . . . ."). ERISA defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." *Id.* § 1002(7).

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), explains "which persons are 'participants' entitled to obtain information about benefit plans covered by ERISA." *Id.* at 105. A participant, the Court held, is not anyone who claims to be one but only an individual with "a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Id.* at 117–18. Because district courts may, but not must, impose penalties for an employer's failure to disclose, abuse-of-discretion review applies to the district court's decision to impose penalties and to the amount imposed. *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994). De novo review applies to the district court's threshold legal conclusion that Zirnhelt was a "participant" in the plan under ERISA. *See Bridges v. Am. Elec. Power Co.*, 498 F.3d 442, 444–45 (6th Cir. 2007).

The district court did not err in concluding that Zirnhelt was a "participant" eligible to seek a penalty for delayed production of ERISA plan documents. Even though Zirnhelt's claim for benefits failed in the end, she still had a "colorable" claim. *See Crawford v. Roane*, 53 F.3d 750, 754–55 (6th Cir. 1995). Zirnhelt had worked for the company for over twelve years and reasonably could have believed that those years of service satisfied the plan's ten-year requirement. And the company did not help matters when it initially failed to define the precise vesting requirements applicable to Zirnhelt's claim. When Zirnhelt inquired about her benefits in 2000, the company initially gave her inconsistent and largely inaccurate responses—though, in all instances, the company rejected her contention that she had vested rights under the plan. First, the company wrote her a letter stating that she "had to be 40 years old with 10 years of service to have any Vested benefits." JA 93. One month later, the company sent her another letter saying that she "needed 10 years of Service to Vest and [must] be 32 years old" because the plan "in 1977 only included services after [the employee] reach[ed] the majority (21)." JA 97. Even that definition, however, was inaccurate because, as we now know, the plan included only those years of service after the employee turned 22, not 21. In the face of the company's initial struggles to determine how many years of service Zirnhelt needed under the plan, Zirnhelt had good reason to determine the answer by looking at the documents herself.

Nor did the district court abuse its discretion in awarding Zirnhelt $10,500 rather than the $39,400 she requested. Zirnhelt, to be sure, requested the plan documents on May 2, 2003, and did not receive the documents for 424 days, which (excluding the 30 days within which the company had to satisfy the request) would yield an award of $39,400 if the court imposed the *maximum* $100-per-day penalty. *See* 29 U.S.C. § 1132(c)(1)(B) (permitting an award of damages "up to $100 a day"). The district court, however, reasonably concluded that, at least until Zirnhelt filed her complaint, the company in good faith believed that Zirnhelt had withdrawn her request based on a discussion between the company and Zirnhelt's attorney. It therefore did not abuse its discretion in calculating the award from the date Zirnhelt filed her complaint (in February 2004) rather than from the date Zirnhelt submitted her written request. *See Bartling*, 29 F.3d at 1067, 1069.

III.

For these reasons, we affirm.