NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0656n.06

Case No. 13-6401

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 21, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARK S. RADELL, individually and on behalf of all other persons similarly situated, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| v. | ) ) | THE WESTERN DISTRICT OF KENTUCKY |
| MICHELIN RETIREMENT PLAN, | ) ) | |
| Defendant-Appellee. | ) | OPINION |

BEFORE: BOGGS and DONALD, Circuit Judges; HOOD, District Judge.[*]

**BERNICE BOUIE DONALD, Circuit Judge.** Mark S. Radell ("Radell") appeals from the September 25, 2013, order of the United States District Court for the Western District of Kentucky dismissing his class-action complaint—filed pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B)—that seeks judicial review of a decision of the Michelin Retirement Plan ("Michelin"). Michelin reduced the amount of Radell's disability-retirement benefit under the applicable plan documents ("Plan") because of Radell's choice to begin receiving that benefit immediately upon his retirement and prior to age sixty-five. Radell argued in the district court that the plain language of the Plan prevented Michelin from reducing his benefits due to his early retirement. The district court disagreed,

_____

[*]The Honorable Denise Page Hood, United States District Court for the Eastern District of Michigan, sitting by designation.

denied Radell's motion for summary judgment, and granted judgment as a matter of law to Michelin. We now **AFFIRM** the judgment of the district court.

I.

A.

Radell worked for Michelin from April 2, 1979, until his termination on March 1, 2007, while participating in the company's long-term disability program. Radell actually retired on March 1, 2012, at the age of fifty-seven years and nine months.

Michelin operates a defined-benefit pension plan governed by ERISA, and Radell was a participant in the Plan. Neither party disputes Radell's entitlement to retirement benefits under the Plan.

On January 30, 2012, Michelin sent Radell a letter to inform him that he had accrued a retirement benefit during his employment with the company. The January 30 letter also included several other documents relating to Radell's entitlement to benefits under the Plan, including a statement of Radell's accrued benefits, a benefit-election form, and two participant summary pages. The first participant summary page contained a breakdown of the information that Michelin used to calculate Radell's benefits, and the second participant summary page demonstrated how Michelin planned to calculate the amount to which Radell would be entitled based on that information. The second participant summary page included an actuarial reduction in Radell's pension because of his early retirement.

On February 7, 2012, Radell contacted Michelin by e-mail to dispute the retirement calculation on the second participant summary page. Radell objected to the actuarial reduction,

claiming that the Plan should entitle him to the complete amount of his pension regardless of his

early retirement. Michelin responded to Radell's inquiry by e-mail on February 12, 2013. That

response stated, in pertinent part:

> Since you are over age 55 and have more than 10 years of service, you can elect
> to retire. However, a retirement commencement prior to your age 65 will be
> classified as an early retirement, and early retirement reductions will apply.
> Under the disability provisions of the plan, you have continued to earn years of
> service under the plan since your termination date in 2007. However, there are no
> disability provisions within the plan that provide an unreduced benefit prior to
> your age 65.

Radell replied to Michelin on the same day, quoting from the disability portion of the Plan and

asserting his conclusion that "the early retirement factors are not considered." Michelin

responded to Radell's second e-mail on February 16, 2012:

> The language you are looking at below means that a person on disability can
> continue to accrue benefits in the Plan through their age 65, which is the normal
> retirement age of the Plan. It is also the age at which LTD benefits normally end.
> This language does not mean that if a person chooses to retire prior to their age 65
> and begin their retirement benefit (which is now coordinated with their LTD
> benefit), that the retirement benefit is unreduced. It is reduced based on the age at
> which a person elects to retire.

Despite this e-mail exchange, Radell signed and returned both participant summary pages

to Michelin on February 28, 2012.[1] The cover letter Radell sent with his submissions noted,

"[T]he actual dollar amounts in the calculations are under dispute and so noted with the

signatures," and the second participant summary page contained a similar handwritten note

below the signature line.

On March 12, 2012, Michelin sent Radell a letter to inform him that, as of March 1, 2012,

he was officially a Michelin retiree. The letter also informed Radell that his pension benefit

---

[1]Because of Radell's disability, his wife actually signed the forms for him pursuant to her power of attorney. For simplicity's sake, this opinion will refer to the actions of both Radells as if they were one.

would begin on March 1, 2012. In response to the March 12 letter from Michelin, Radell sent a letter dated the same day to the Michelin Pension and Benefits Appeals Board ("Board").[2]

The Board treated Radell's letter as an appeal of the decision to reduce his pension benefits due to his early retirement. When the Board met on April 16, 2012, it voted unanimously to deny Radell's appeal. In a letter dated April 18, 2012, the Board informed Radell of the denial:

> The Pension and Benefits Appeals Board met on April 16, 2012 in order to review your appeal in which you disputed the early retirement deduction on your Michelin Retirement Plan early retirement calculation.
>
> Some of the information that the Board reviewed in making their determination is as follows: Your letter of appeal, received March 12, 2012; emails between you and Connie Judkins, dated February 12, 2012 through February 16, 2012; call notes from the Personnel Service Center, dated from January 24, 2012 through February 28, 2012; <u>Michelin Retirement Plan (as amended and Restated, Effective January 1, 2006)</u>.
>
> The board voted to deny your request, after review of the supplied information and the Plan language. Although we were unable to approve this appeal, please note that the Board is responsible to make determinations according to the Plan specifications. If you believe that this decision was incorrectly made, you have the right to bring civil action under the Employee Retirement Income Security Act of 1974 (ERISA).

### B.

Because this appeal concerns the interpretation and application of multiple provisions of the Plan, this section sets out the language of those provisions in detail:

4.1     <u>Retirement Benefit</u>

(A)     <u>Retirement Formula</u>.

---

[2]When this opinion refers to the actions of Michelin, those references include the actions of the Board.

Subject to the provisions of Sections 4.7 and 4.8 of the Plan, a Participant's annual retirement Pension commencing on or after such Participant's Normal Retirement Date shall be an amount equal to:

(1) one and three-tenths percent (1.3%) of that part of such Participant's Average Final Compensation which is not in excess of his Covered Compensation, multiplied by his Credited Years of Service, not in excess of thirty-five (35) such Years (as hereinafter defined) plus,

(2) one and eight-tenths percent (1.8%) of that part of such Participant's Average Final Compensation which is in excess of his Covered Compensation (if any), multiplied by his Credited Years of Service, not in excess of thirty-five (35) such Years, provided that no more than thirty-five (35) Credited Years of Service shall be taken into account under the Plan.

4.3     Early Retirement

(A)     Payable on Normal Retirement Date.

Except as provided in Paragraph (B) hereof, a Participant who retires on an Early Retirement Date pursuant to Section 3.3 of the Plan shall receive, commencing on his Normal Retirement Date, an amount of retirement Pension determined in accordance with Section 4.1 or 4.2 of the Plan, if applicable, based upon his Credited Years of Service, Average Final Compensation and Covered Compensation on his Early Retirement Date.

(B)     Payable Before Normal Retirement Date.

A Participant who retires on his Early Retirement Date may elect to receive his Pension described in Paragraph (A), commencing on his Early Retirement Date or on the first day of any month thereafter, multiplied by the factor contained in Table A-Actuarial Equivalent Factors for the Participant's age on the date payment is to commence.

(C)     Applicable Provisions.

Participants who retire on an Early Retirement Date shall look solely to the Plan as in effect on their Early Retirement Date for determination and payment of their Pension benefits, if any.

(D)     Early Retirement Supplement.

In addition to any other amounts payable hereunder, a Participant who retires on an Early Retirement Date pursuant to Section 3.3 shall, provided such Participant has completed at least thirty (30) years of Vested Service on such

Early Retirement Date, be entitled to an Early Retirement Supplement of five hundred dollars ($500) per month reduced by any similar amount received as an early retirement supplement from the Pension Plan of an Affiliated Company or an entity that would be an Affiliated Company if it were a domestic corporation, trade or business, or other entity, commencing with the month of retirement and ending with the month prior to the first month for which the Participant attains eligibility for eighty percent (80%) of the Unreduced Primary Social Security Benefit under the Social Security Act, or the month in which the Participant dies, whichever shall first occur.

4.5     Disability Retirement

(A) Notwithstanding the foregoing provisions of this Article 4 or any other provision of the Plan, if a Participant satisfies all three conditions set forth below (in this Section 4.5(A)) while an Employee, he shall be entitled to receive no less than the Pension accrued by him as of the date he was first Disabled. This Pension shall be calculated according to Section 4.1 of the Plan (or Section 4.2 of the Plan, if applicable). The three conditions are:

(1) The Employee must become Disabled prior to his Normal Retirement Date.

(2) The Employee must have completed at least five (5) Years of Vested Service as of the date he was first Disabled.

(3) The Employee must either remain Disabled until his Early or Normal Retirement Date (see Section 4.6 of the Plan) or, if the Disabled Participant ceases to be Disabled, present himself for return to work to the Employer within thirty (30) days after he ceases to be Disabled.

8A.2    Board; General Powers

. . .

(B) The Board shall have the power to take all actions and to make all decisions necessary or proper to carry out the Plan. Subject to Paragraph (E) below, the determination of the Board as to any question involving the general administration and interpretation of the Plan shall be final, conclusive and binding. Any discretionary actions to be taken under the Plan by the Board with respect to the classification of Employees, Participants, Joint or Contingent Annuitants, Beneficiaries, contributions, or benefits shall be uniform in their nature and applicable to all persons similarly situated. Without limiting the generality of the foregoing, the Board shall have the following powers:

(1) To require any person to furnish such information as it may request for the purpose of the proper administration of the Plan as a condition to receiving any benefits under the Plan;

(2) To make and enforce such rules and regulations and prescribe the use of such forms as it shall deem necessary for the efficient administration of the Plan;

(3) To interpret the Plan in its sole discretion, and to resolve ambiguities, inconsistencies and omissions, which finding shall be binding, final, and conclusive;

(4) To decide questions concerning the Plan and the eligibility of an Employee to participate in the Plan, in accordance with the provisions of the Plan;

(5) To determine the amount of benefits which shall be payable to any person in accordance with the provisions of the Plan and to provide a full and fair review to any Participant whose claim for benefits has been denied in whole or in part; and

. . . .

(E) The Board shall create a Pension and Benefits Appeals Board to which such Board shall delegate the authority to hear and decide all appeals of denied applications for benefits under the Plan, and the authority to interpret any provision of the Plan in accordance with paragraph (1) hereof. The Board shall, from time to time, appoint members to the Pension and Benefits Appeals Board and shall, from time to time, accept resignations from said Pension and Benefits Appeals Board members and, from time to time, remove members from such Pension and Benefits Appeals Board as the Board may deem appropriate. The Pension and Benefits Appeals Board shall consist of such numbers of voting and nonvoting members as the Board may designate from time to time.

II.

We review de novo a district court's grant of summary judgment in an ERISA appeal, "applying the same standard of review to the plan administrator's action as . . . the district court." *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 700 (6th Cir. 2014).

Radell's first argument implicates the applicable standard of review. He contends that the district court erred when it gave deference to Michelin's application of the Plan terms.

"In an action challenging the denial of benefits under 29 U.S.C. § 1132(a)(1)(B), a plan administrator's decision is reviewed 'under a de novo standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000) (emphasis removed) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). If the Plan terms contain a clear grant of such discretionary authority, then this Court reviews the benefits denial under the "arbitrary and capricious" standard of review. *Id.* Section 8A.2 of the Plan, in subsections (B)(3)-(4), provides a clear grant of discretion to Michelin to construe the terms of the plan and determine eligibility for benefits. The arbitrary-and-capricious standard thus presumptively applies to Michelin's actions in this case.

Radell's argument to the contrary proceeds in two parts: (1) the Plan language is unambiguous, and (2) ERISA requires Michelin to adhere to the unambiguous terms of the plan. Although the two premises Radell sets out in support of his argument for de novo review are correct as a matter of law, those premises do not command the conclusion for which Radell argues. When interpreting the language of an ERISA plan, this Court will apply a plain-meaning construction and "give effect to [its] unambiguous terms," *Farhner v. United Transp. Union Discipline Income Protection Program*, 645 F.3d 338, 343 (6th Cir. 2011) (quoting *Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000)) (internal quotation marks omitted), but those

principles do not change the applicable standard of review, *see Williams*, 227 F.3d at 711. We accordingly reject this argument.

Under the arbitrary-and-capricious standard, this Court "determines whether, in light of the plan's provisions, the plan administrator's decision was rational." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005). An administrator's decision is rational "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Id.* (quoting *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003)) (internal quotation marks omitted).

All of Radell's arguments related to the allegedly improper calculation of his benefits essentially contend that Section 4.5 of the Plan unambiguously confers him an unreduced disability-retirement benefit, and the district court erred when it looked to language in Section 4.3 of the Plan regarding the commencement of early-retirement benefits to affirm Michelin's application of the actuarial reduction. Section 4.5 of the Plan begins:

> (A) Notwithstanding the foregoing provisions of this Article 4 or any other provision of the Plan, if a Participant satisfies all three conditions set forth below (in this Section 4.5(A)) while an Employee, he shall be entitled to receive no less than the Pension accrued by him as of the date he was first Disabled. This Pension shall be calculated according to Section 4.1 of the Plan . . . .

The parties do not dispute that Radell satisfies the three conditions in section 4.5(A)(1)-(3), so we must determine whether the above language unambiguously confers on Radell the right to receive his disability-retirement benefits without an actuarial reduction. Incorporated by reference in Section 4.5(A) of the Plan, Section 4.1 provides: "Subject to the provisions of Sections 4.7 and 4.8 of the Plan, a Participant's annual retirement Pension *commencing on or after such Participant's Normal Retirement Date* shall be an amount equal to" the sum of two

calculations. The district court reasoned that because Radell commenced receiving his disability-retirement benefits prior to his normal retirement date of age sixty-five, the early-retirement provision contained in Section 4.3 of the Plan "required [Michelin] to reduce his benefit."

An ERISA plan is ambiguous "if it is 'subject to two reasonable interpretations.'" *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 370 (6th Cir. 2009) (quoting *Zirnhelt v. Mich. Consol. Gas Co.*, 526 F.3d 282, 287 (6th Cir. 2008)). "However, the fact that the parties offer competing interpretations does not dictate a finding that the provision is ambiguous, because the alternative interpretation offered by a claimant 'must be a plausible one.'" *Id.* (quoting *Zirnhelt*, 526 F.3d at 287).

Radell's interpretation, that Section 4.5 confers upon him a right to receive his disability-retirement benefit without an actuarial reduction, is reasonable because of the introductory language of Section 4.5. It begins by stating, "Notwithstanding the foregoing provisions of this Article 4 or any other provision of the Plan," and then continues on to state that a participant's pension "shall be calculated according to Section 4.1 of the Plan." This language plausibly could mean that Michelin should pay Radell the amount of benefits, unaffected by actuarial reduction, calculated based on the formula contained in Section 4.1 without reference to any limiting language in that section.

The language of Section 4.5 also reasonably could support Michelin's reading of the Plan. Michelin argues that the language in Section 4.5 incorporating Section 4.1 incorporates all of Section 4.1, including the limitation relating to the commencement of benefits. And because the Section 4.1 calculation is based on benefits commencing at age sixty-five, it does not address

an actuarial reduction for early retirement. Accordingly, the argument goes, when a participant eligible for disability-retirement benefits retires prior to age sixty-five, then Michelin must look to the early-retirement provision in Section 4.3(B) and actuarially reduce the participant's benefit.

Because the parties' alternative interpretations are reasonable, we hold that the Plan is ambiguous with respect to the question at issue in this case.

Under the deferential arbitrary-and-capricious standard, holding that the Plan language is ambiguous resolves this appeal in favor of Michelin. In order for the Plan language to be ambiguous, Michelin's interpretation of it must be reasonable. *See Majestic Star Casino*, 581 F.3d at 370. In order to survive arbitrary-and-capricious review, Michelin's decision must have been rational. *Calvert*, 409 F.3d at 292. Because "it is possible to offer a reasoned explanation, based on the evidence, for [the] particular outcome" in this case, *id.* (quoting *McDonald*, 347 F.3d at 169), Michelin's application of the early-retirement reduction to Radell's disability-retirement benefit was not arbitrary and capricious.

III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.