*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0339p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SHELBY COUNTY HEALTH CARE
CORPORATION,
                          *Plaintiff-Appellee,*

        *v.*

THE MAJESTIC STAR CASINO, LLC GROUP
HEALTH BENEFIT PLAN,
                          *Defendant-Appellant.*

Nos. 08-6078/6419

_____

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 06-02549—Bernice B. Donald, District Judge.

Argued:  June 16, 2009

Decided and Filed:  September 22, 2009

Before:  CLAY and ROGERS, Circuit Judges; JORDAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  David A. Thornton, BASS, BERRY & SIMS PLC, Memphis, Tennessee, for Appellant.  Curtis Henry Goetsch, McCULLOUGH & McCULLOUGH, PLLC, Germantown, Tennessee, for Appellee.  **ON BRIEF:**  David A. Thornton, Colleen D. Hitch, BASS, BERRY & SIMS PLC, Memphis, Tennessee, John R. Kirk, BASS, BERRY & SIMS PLC, Nashville, Tennessee, for Appellant.  Curtis Henry Goetsch, McCULLOUGH & McCULLOUGH, PLLC, Germantown, Tennessee, for Appellee.

        CLAY, J., delivered the opinion of the court, in which JORDAN, D. J., joined. ROGERS, J. (pp. 30-37), delivered a separate opinion concurring in part and concurring in the judgment.

_____

[*]The Honorable R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

———————————

**OPINION**

———————————

CLAY, Circuit Judge.  Plaintiff, Shelby County Health Care Corporation ("the Med"), filed this action pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"), challenging the decision of Majestic Star Casino, LLC ("Majestic"), the plan administrator of The Majestic Star Casino, LLC Group Health Benefit Plan (the "Plan"), to deny the Med's claim for benefits.  The Med filed the claim pursuant to an assignment of benefits by one of Majestic's employees insured under the Plan.  On the parties' cross-motions for summary judgment on the administrative record, the district court granted judgment in favor of the Med.  The district court determined that Majestic erroneously denied benefits, and awarded benefits to the Med.  Majestic appeals from that decision, challenging the district court's decision on several grounds.  In addition, Majestic appeals from the subsequent order of the district court awarding attorney fees and costs to the Med.  For the reasons that follow, we **AFFIRM** the judgment of the district court granting benefits and prejudgment interest to the Med, but **REVERSE** the district court's order awarding attorney fees.

**BACKGROUND**

Damon Weatherspoon, an employee of Fitzgerald's Casino, a subsidiary of Majestic, sustained injuries as a result of a one-car accident on March 13, 2005. According to the Uniform Crash Report (the "Crash Report") completed by the responding Mississippi police officer, Weatherspoon was driving straight on a two-lane state highway when his car left the road, entered a ditch, and collided with a tree.  The Crash Report indicated that, at the time of the accident, the road was dry, the weather was clear, and the road was not under construction.  Additionally, the police officer reported that Weatherspoon was not wearing a seatbelt and did not have a driver's license or proof of insurance.  The police officer also checked a box indicating that

"driving under the influence" was a "contributing circumstance" to the accident, and noted that a blood test to determine Weatherspoon's blood-alcohol level was pending.

Following the accident, Weatherspoon received treatment for his multiple injuries at the Regional Medical Center, one of the Med's medical facilities, accumulating medical bills totaling over $400,000. On March 14, 2005, Weatherspoon assigned his insurance benefits to the Med, authorizing the Med to seek and recover all health insurance and hospitalization benefits available to Weatherspoon under the Plan. On June 10, 2005, Weatherspoon submitted a claim for medical benefits, again authorizing the Plan to pay the benefits directly to the Med.

Weatherspoon filed his claim with Benefit Administrative Systems, Ltd. ("BAS"), the third-party administrator for the Plan. Under the terms of the Plan, BAS was "hired as the third party Contract Administrator by the Plan Administrator to perform claims processing and other specified administrative services in relation to the Plan." (ROA vol. 1 at 89.) Importantly, the Plan Summary stated that BAS "is not a fiduciary of the Plan and does not exercise any of the discretionary authority and responsibility granted to the Plan Administrator." (*Id.*) The Plan documents define Majestic as "the sole fiduciary of the Plan," and provide that Majestic "shall have the sole discretionary authority to determine eligibility for Plan benefits or to construe the terms of the Plan, and benefits under the Plan will be paid only if the Plan Administrator decides, in its discretion, that the Participant or beneficiary is entitled to such benefits." (ROA vol. 1 at 96.)

After receiving Weatherspoon's claim for medical benefits, BAS began its investigation of the claim. BAS sent a letter to the Mississippi Department of Public Safety ("DPS") requesting the Crash Report, Weatherspoon's motor vehicle records, and the citation for driving under the influence. However, the DPS informed BAS that it could not "track" Weatherspoon because it had "no record of him in the system." (A.R. 180.) The DPS referred BAS to the office of the police officer who completed the Crash Report. BAS then contacted the Driver Records Department of the DPS, which

informed BAS that, because Weatherspoon did not have a driver's license, it could not determine whether he was convicted of driving under the influence.

Despite being unable to ascertain whether Weatherspoon was driving under the influence at the time of the accident, BAS informed the Med that Weatherspoon's medical expenses were "ineligible" for coverage because the Plan excludes from coverage charges related to an illegal act. BAS based its conclusion on an exclusionary provision of the Plan:

> This Plan does not cover and no benefits shall be paid for any loss caused by, incurred for or resulting from . . . . [c]harges for or in connection with an injury or illness arising out of the participation in, or in consequence of having participated in, a riot, insurrection or civil disturbance or being engaged in an illegal occupation or the commission or attempted commission of an illegal or criminal act.

(ROA vol. 1 at 77.)

In a letter dated September 16, 2005, BAS sent counsel for the Med copies of the Plan Summary, the Crash Report, and the explanation of benefits denying coverage. The letter noted that "Weatherspoon has not appealed the Plan's denial by providing proof of [insurance], a valid driver's license . . . and a dismissal of the charges brought against him . . . ." (A.R. 152.) On September 23, 2005, counsel for the Med sent a letter to BAS requesting an appeal of the denial of its claim for benefits, stating that "an accident report is not conclusive evidence of the commission of an illegal act." (A.R. 151.)

To apprise Majestic of the status of Weatherspoon's claim, BAS sent an email to Sally Ramirez, Majestic's Corporate Director of Compensation and Benefits. BAS attached the letter it received from the Med's counsel requesting an appeal of the denial of benefits, noting that the Med appealed "the claims we denied on Damon Weatherspoon." (A.R. 150.) The email from BAS also informed Ramirez that "[w]e denied the claims based on 'an illegal act'" and that BAS "will be reviewing this case . . . and . . . will be contacting you to discuss further." (*Id.*)

On October 4, 2005, as part of its review of the Med's appeal, BAS requested information from the county clerk regarding the status of Weatherspoon's blood-alcohol test. In response, on October 5, 2005, the county clerk sent BAS a letter confirming that "blood was drawn and that the status of the [blood] test given is pending." (A.R. 133.) The letter further informed BAS that it could "contact [the clerk's] office within the next few months to get an updated status" of the blood test. (*Id.*) However, BAS did not obtain the results of the blood test prior to completing its review of the Med's appeal and issuing the final decision to deny the benefits claim.

On October 24, 2005, BAS sent a letter to counsel for the Med noting receipt of the Med's appeal. The same day, BAS sent Ramirez a copy of the letter and informed Ramirez that BAS "has reviewed the appeal" and that BAS was "still in the process of discovery" and would "update [Majestic] on [BAS's] final response shortly." (A.R. 36.) Subsequently, on November 18, 2005, BAS sent an email to Ramirez requesting that she "review and approve" the attached denial letter "before [BAS] send[s] it out." (A.R. 6.) The record does not contain a response from Ramirez.

By letter dated November 21, 2005, BAS informed counsel for the Med that it was denying the benefits claim, stating that "[w]e have conducted a final review of the Plan's denial of benefits." (A.R. 3.) The letter cited the illegal-act provision of the Plan, and noted that BAS's "final determination" was based on the Crash Report and BAS's independent investigation of whether Weatherspoon had a driver's license or automobile insurance. (A.R. 3-4.) Specifically, BAS justified its denial of benefits as follows:

> Mr. Weatherspoon's charges for driving under the influence are currently pending. A pending charge on an accident report is not proof of evidence of a commission of an illegal act, however, driving without a license or automobile insurance coverage under Mississippi law, is an illegal act; neither of which require a conviction to be considered illegal. . . .

(A.R. 4.) Thus, although the denial letter identified three illegal acts potentially warranting application of the exclusionary provision—driving under the influence, driving without insurance, and driving without a license—BAS based the denial decision solely on driving without a license and driving without insurance. Because of the lack

of evidence, BAS expressly disclaimed reliance on the citation for driving under the influence as a reason for denying benefits.

After receiving the final denial letter from BAS, on August 24, 2006, the Med filed an action for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). On the parties' cross-motions for summary judgment on the administrative record, the district court found in favor of the Med, concluding that Majestic improperly denied benefits. In reviewing the benefits decision, the district court recognized that the Plan documents conferred discretionary authority on Majestic, which generally would require the court to review Majestic's decision under an arbitrary and capricious standard of review. Nonetheless, the district court found that *de novo* review was appropriate because Majestic "was almost totally uninvolved in the decision to deny benefits to Weatherspoon." (ROA vol. 1 at 253.)

Reviewing the denial of benefits *de novo*, the district court determined that the illegal-act provision did not provide a valid basis for denying Weatherspoon's claim for benefits. The district court concluded that there was insufficient evidence to prove that Weatherspoon was driving under the influence and that the two illegal acts BAS relied upon to deny the claim—driving without a license and driving without insurance—had an insufficient "causal link" to Weatherspoon's injuries. (ROA vol. 1 at 255-56.) In addition to finding that Weatherspoon's claim was wrongly denied, the district court awarded benefits to the Med.

As noted above, BAS did not obtain the results of Weatherspoon's blood test prior to issuing its final denial of Weatherspoon's claim. However, after the district court granted the Med's motion for judgment on the administrative record, Majestic discovered the existence of an amended crash report that confirmed Weatherspoon's blood-alcohol level at the time of the accident was 0.190, more than double Mississippi's legal limit of 0.08. Based on this new evidence, Majestic filed a motion to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure. The district court denied Majestic's motion, noting that Majestic could not expand the

administrative record with the newly discovered blood-test results. On August 7, 2008, the Med filed a motion for costs, attorney fees, and prejudgment interest. The district court granted the motion.

Majestic filed a timely notice of appeal from each of the district court's orders, and we consolidated Majestic's appeals for review. On appeal, Majestic raises a number of claims, including whether the district court erred in applying *de novo* review, whether the district court should have remanded the case to Majestic for further consideration, whether the district court abused its discretion in denying Majestic's Rule 59(e) motion, and whether the district court abused its discretion in awarding attorney fees and costs to the Med.

## DISCUSSION

### I.  STANDARD OF REVIEW APPLICABLE TO THE DECISION TO DENY BENEFITS

#### A.  Standard of Review

This Court "review[s] a district court's determination regarding the proper standard to apply in its review of a plan administrator's decision *de novo*." *Haus v. Bechtel Jacobs Co.*, 491 F.3d 557, 561 (6th Cir. 2007) (quoting *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 807 (6th Cir. 2002)). "Factual findings inherent in deciding an ERISA claim are reviewed for clear error." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 714 (6th Cir. 2000); *see also Pannebecker v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1213, 1217 (9th Cir. 2008) (citing *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006) (en banc)) (noting that an appellate court "review[s] *de novo* the district court's choice and application of the standard of review to decisions by fiduciaries in ERISA cases . . . [and] review[s] for clear error the underlying findings of fact").[1] "A district court's factual findings are clearly erroneous

_____

[1]Majestic attempts to avoid this standard of review by arguing that, when the district court reviews only the administrative record, its findings should be reviewed *de novo*. In support of its argument, Majestic cites an unpublished decision from this Court stating that, in the ERISA context, this Court "reviews the district court's determinations, both factual and legal, under the de novo standard of review." *Rehab. Inst., Inc. v. Mich. United Food & Commercial Workers Health & Welfare Funds*, 178

if, based on the entire record, we are 'left with the definite and firm conviction that a mistake has been committed.'" *Sanford v. Harvard Indus. Inc.*, 262 F.3d 590, 595 (6th Cir. 2001) (quoting *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1067 (6th Cir. 1994)).

### B.    Analysis

As in the district court, the parties dispute the standard of review applicable to the decision to deny Weatherspoon's benefits claim. Although ERISA creates a cause of action for plan participants to challenge a plan administrator's benefits determination, it does not specify the judicial standard of review applicable to such actions. The Supreme Court, however, has established that a denial of benefits "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Following *Firestone*, this Court has held that, if a plan expressly grants to the administrator such discretion, and there is no evidence of a conflict of interest, both the district court and this Court must review the administrator's denial of benefits under the highly deferential arbitrary and capricious standard of review. *Moos v. Square D Co.*, 72 F.3d 39, 41 (6th Cir. 1995).

Nonetheless, even when the plan documents confer discretionary authority on the plan administrator, when the benefits decision "is made by a body other than the one authorized by the procedures set forth in a benefits plan," federal courts review the benefits decision *de novo*. *Sanford*, 262 F.3d at 597 (adopting the reasoning of *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 229 (2d Cir. 1995)). Where a plan administrator does not make the benefits decision, the plan administrator has not exercised its

---

F. App'x 449, 451 (6th Cir. 2006). However, the cases to which the unpublished decision cites do not support the articulated standard of review. For example, *Wilkins* establishes that "[w]ith respect to review of the plan administrator's denial of benefits, both the district court and this court review *de novo* the plan administrator's denial of ERISA benefits . . . . This *de novo* standard of review applies to the factual determinations as well as to the legal conclusions *of the plan administrator*." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998) (emphasis added). In this case, however, the factual finding at issue on appeal was not made by the plan administrator; instead, the *district court* made a factual determination based on its review of the record.

discretionary authority, and therefore a deferential standard of review is not justified. *See id.* at 596-97 ("When an unauthorized body that does not have fiduciary discretion to determine benefits eligibility renders such a decision, . . . deferential review is not warranted.").

It is undisputed that the Plan documents give Majestic the discretionary authority to interpret the Plan and make the final determination regarding whether a plan participant is entitled to benefits. The parties also agree that the Plan explicitly denies BAS such authority. However, the parties dispute whether Majestic actually exercised its discretion or whether, as the Med contends, BAS improperly acted as a fiduciary and exercised the discretionary reserved for Majestic. Therefore, to determine the appropriate standard of review applicable to the decision to deny benefits, the district court was required to resolve the factual issue of "who actually made the benefit determination." *Sharkey*, 70 F.3d at 229. Because the issue of whether Majestic or BAS made the decision to deny benefits is a factual issue, the district court's finding is reviewed for clear error. *See Williams*, 227 F.3d at 714.

Examining the administrative record, the district court determined that "Majestic was almost totally uninvolved in the decision to deny benefits to Weatherspoon. . . . Because BAS was *explicitly not* granted discretionary authority to determine eligibility for benefits and Majestic simply adopted its decision without engaging in any independent fact-finding, the Court will apply a de novo standard of review." (ROA vol. 1 at 253.) Thus, the district court made a finding of fact that BAS, not Majestic, made the decision to deny benefits.

The record supports the district court's finding. First, the record shows that BAS alone investigated Weatherspoon's claim. All requests for documents appeared on BAS letterhead and were sent by BAS representatives. The documents in the record also indicate that BAS was the entity that made the ultimate decision to deny the Med's claim. Regarding the initial denial of benefits, for example, BAS's internal activity reports state that BAS concluded that the claim should be denied and "called Sally

Ramirez to *inform* her of this claim and *let her know* that it is not covered." (A.R. 88 (emphasis added).)

Similarly, Dawn Evanchik, a BAS representative, informed Ramirez in an email of the Med's appeal and advised her that "[*w*]*e* denied the claims based on 'an illegal act.'" (A.R. 150 (emphasis added).) The email further stated that "we will be reviewing this case . . . and . . . will be contacting you to discuss further." (*Id.*) Internal emails at BAS state that BAS is "working on this" appeal and that "BAS will submit notification of the results of said appeal" directly to counsel for the Med. (A.R. 147.) Later in the appeals process, BAS apprised Ramirez that BAS "has reviewed the appeal," was "still in the process of discovery," and would "update [Majestic] on [BAS's] final response shortly." (A.R. 36.)

Communications with counsel for the Med further demonstrate that Majestic did not make the benefits decision. The letters to counsel were on BAS letterhead and indicated that BAS was responsible for reviewing both the claim and the Med's appeal of the denial of benefits. *See Anderson v. Unum Life Ins. Co. of Am.*, 414 F. Supp. 2d 1079, 1098 (M.D. Ala. 2006) (finding significant the fact that correspondence to the claimant instructed her to direct her appeal to the claims administrator). Most significantly, BAS issued the final denial letter to the Med on BAS letterhead. The letter stated that "[w]e have conducted a final review of the Plan's denial of benefits." (A.R. 3.) Further, BAS stated that its "decision to deny benefits [was] based on a reasonable interpretation of the Plan," indicating that BAS, rather than Majestic, interpreted the term "illegal act" in the Plan in determining whether Weatherspoon was eligible to receive benefits. *See Culp, Inc. v. Cain*, 414 F. Supp. 2d 1118, 1125-27 (M.D. Ala. 2006) (applying *de novo* review to the benefits decision because although the plan administrator had discretionary authority to interpret the plan, the plan administrator made no determination about the meaning of the plan provision at issue).

Accordingly, there is no evidence that Majestic was involved in BAS's decision to deny benefits. Although Ramirez submitted an affidavit stating that she was "in a

continuing dialogue with BAS regarding whether [the] claim for benefits was payable pursuant to the terms of the Plan" and that she "approved the form and contents" of the denial letter before BAS sent the letter to the Med, (ROA vol. 1 at 199), the documents in the record suggest otherwise. For example, although the investigation into and initial denial of the Med's claim occurred in September 2005, Ramirez was unaware of the claim until at least October 3, 2005. That day, Ramirez sent an email to BAS requesting that BAS forward all previously sent emails and documents to her business email account, noting that she "no longer use[d]" the email account to which BAS had sent all of its correspondence regarding Weatherspoon's claim. (A.R. 143.) In addition, although BAS asked Ramirez to "review and approve" the final denial letter, BAS never requested that Majestic approve its decision to deny benefits. (A.R. 6.) Further, there is no evidence that Majestic even reviewed the letter, as Majestic did not make any changes to the denial letter or otherwise respond to BAS.[2]

Despite the extensive evidence indicating that Majestic did not make the decision to deny benefits, Majestic argues that it is entitled to deferential review because it retained the "sole discretionary authority to determine eligibility for Plan benefits or to construe the terms of the Plan." (ROA vol. 1 at 96, 104.) However, whether Majestic reserved for itself the discretion to determine eligibility under the Plan does not answer whether, in this particular case, Majestic exercised that discretionary authority. *See Anderson*, 414 F. Supp. 2d at 1098 (concluding that, even if the plan documents gave the plan administrator the discretionary authority to decide benefits claims, the policy's terms "simply do not speak to the issue of whether or not [the fiduciary] actually retained its authority to make claims determinations"). Majestic has failed to meet its burden of

---

[2]Also suggesting a lack of review by Majestic is the fact that BAS sent the "review and approve" email in the afternoon on Friday, November 18, 2005, and sent the denial letter on Monday, November 21, 2005. While that may be sufficient time to proofread a letter, it seems unlikely that Majestic could review and approve the actual decision to deny coverage during that time.

proving that deferential review should apply to the decision to deny Weatherspoon's claim for medical benefits. *See Sharkey*, 70 F.3d at 230.[3]

The evidence in the record demonstrates that BAS made the decision to deny coverage, communicated that decision directly to counsel for the Med, and then merely "informed" Majestic of its decision. Given the substantial evidence in the record supporting the district court's finding, we conclude that the district court did not clearly err in finding that BAS rather than Majestic made the decision to deny Weatherspoon's claim for benefits. Because the district court's underlying factual finding is dispositive of the standard of review applicable to the benefits decision, we further conclude that the district court did not err in applying the *de novo* standard of review. *See Sanford*, 262 F.3d at 597 ("Having identified no clear error in the district court's finding that Harvard did not comply with the plan procedures in rescinding Sanford's benefits, we also hold that the court did not err by reviewing Harvard's decision *de novo*, rather than under the more deferential 'arbitrary and capricious' standard.").

## II.      DENIAL OF BENEFITS

### A.      Standard of Review

This Court reviews *de novo* the district court's judgment on the administrative record regarding an ERISA denial of benefits. *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 552 (6th Cir. 2008); *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 258 (6th Cir. 2006); *Sanford*, 262 F.3d at 597. "When applying a *de novo* standard in the ERISA context, the role of the court reviewing a denial of benefits 'is to determine whether the administrator . . . made a correct decision.' The administrator's decision is accorded no

---

[3]Contrary to Judge Rogers' concurrence, *Geddes v. United Staffing Alliance Employee Medical Plan*, 469 F.3d 919, 927 (10th Cir. 2006) does not apply to this matter because the issue in that case was whether a plan administrator could only delegate its fiduciary duties to another fiduciary, or whether it could delegate its fiduciary duties to an independent third party. In *Geddes*, the court found that the plan administrator had not forfeited its discretionary authority by delegating fiduciary duties to an independent third party. Here there is no dispute that Majestic was entitled to delegate fiduciary duties to independent third party BAS. However, unlike the plan administrator in *Geddes*, Majestic did forfeit its discretionary authority by not exercising its final review authority over the decision to deny benefits and thereby violated the plan.

deference or presumption of correctness." *Hoover*, 290 F.3d at 808-09 (quoting *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966-67 (6th Cir. 1990)).

### B.     Analysis

As discussed above, in denying Weatherspoon's claim for benefits, BAS relied on the following exclusionary provision:

> This Plan does not cover and no benefits shall be paid for any loss caused by, incurred for or resulting from . . . . [c]harges for or in connection with an injury or illness arising out of the participation in, or in consequence of having participated in, a riot, insurrection or civil disturbance or being engaged in an illegal occupation or the commission or attempted commission of an illegal or criminal act.

(ROA vol. 1 at 77.) Majestic argues that Weatherspoon's medical expenses are excluded from coverage under this provision because Weatherspoon was engaged in three illegal acts at the time of his accident: driving under the influence, driving without a license, and driving without insurance.

With respect to the DUI charge, Majestic relies on the Crash Report's indication that Weatherspoon was driving under the influence at the time of the accident to support the denial of benefits. Majestic contends that it "deferred to the officer's conclusion" set forth in the Crash Report that "driving under the influence" contributed to the accident, and therefore its denial of coverage was reasonable. Regardless of whether Majestic could have denied Weatherspoon's claim solely based on the Crash Report, BAS and Majestic expressly disclaimed reliance on the DUI allegation as the basis for denying the claim for benefits in the denial letter.

The denial letter acknowledges that "an accident report is not conclusive evidence of the commission of an illegal act." (A.R. 3.) Discussing the results of the investigation regarding Weatherspoon's DUI citation, the denial letter notes that the "results [of the blood test] are pending." (A.R. 3.) BAS then provided the reasons for denying coverage:

> Mr. Weatherspoon's charges for driving under the influence are currently pending. A pending charge on an accident report is not proof of evidence of a commission of an illegal act, however driving without a license or automobile insurance coverage under Mississippi law, is an illegal act; neither of which require a conviction to be considered illegal.

(A.R. 4 (emphasis added).) The letter demonstrates that BAS disclaimed reliance on the DUI charge as the basis for denying coverage. The denial letter concedes that BAS lacked sufficient evidence to conclude that Weatherspoon was under the influence of alcohol at the time of the accident. Further, BAS's internal communications show that it did not rely on driving under the influence as the illegal act warranting denial of coverage. In an internal memorandum, BAS noted that it "denied claims on this person [Weatherspoon] because he was performing an illegal act when injured. (Driving w/o insurance, no driver's license)." (A.R. 87.)

Because BAS did not rely on the DUI charge as a reason to deny coverage, Majestic is precluded from arguing that the decision to deny benefits was correct because BAS reasonably relied on the Crash Report to conclude that Weatherspoon was driving under the influence, and that the illegal-act provision therefore applied. *See Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 828-29 (10th Cir. 2008). In *Kellogg*, the beneficiary died following a car crash. *Id.* at 820. A witness to the crash told responding police officers that it "appeared" that the beneficiary had suffered from a seizure as he lost control of the car. *Id.* The claims administrator denied the claim for death benefits, concluding that losses resulting from physical illness, such as a seizure, were ineligible for coverage. *Id.* at 829.

In the district court, however, the claims administrator argued that the beneficiary was not entitled to receive benefits because the death was not "accidental." *Id.* at 828. The court of appeals determined that the claims administrator was precluded from invoking the non-accidental basis for denying coverage because the letter denying the claim "cannot reasonably be interpreted as denying . . . coverage on the basis" asserted in the district court. *Id.* at 829. Similarly, Majestic, though it mentioned the DUI as an "illegal act," it relied solely on the illegal acts of driving without a license and driving

without insurance to deny Weatherspoon's claim. Like the claims administrator in *Kellogg*, Majestic is precluded from asserting a different basis for denial in the judicial proceedings.

Consequently, for Majestic's decision to deny benefits to be upheld, either driving without insurance or driving without a license must constitute an illegal act and also have a sufficient causal connection to Weatherspoon's injuries.

### 1.          Ambiguity of "Illegal Act"

Weatherspoon was denied coverage pursuant to the illegal-act provision of the Plan which excludes coverage for injuries resulting from "being engaged in . . . the commission or attempted commission of an illegal or criminal act." However, the Plan does not define the term "illegal." In denying Weatherspoon's claim for benefits, BAS concluded that driving without insurance and driving without a license constituted illegal acts because they were prohibited by Mississippi law. Therefore, BAS interpreted an illegal act as encompassing any action that is contrary to law, even if such action is not criminal. Because we review the decision to deny benefits *de novo*, this interpretation is entitled to no deference. *See Hoover*, 290 F.3d at 809.

As in the district court, the parties dispute whether the term "illegal act" is ambiguous.[4] Whether the language of an ERISA plan is ambiguous is a question of law that this Court reviews *de novo*. *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 851 (6th Cir. 2006). The phrase "illegal act" is ambiguous if it is "subject to two reasonable interpretations." *Zirnhelt v. Mich. Consol. Gas Co.*, 526 F.3d 282, 287 (6th Cir. 2008) (*quoting Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir. 1994)). However,

---

[4]Although the Med did not file a cross-appeal regarding the district court's determination that the phrase "illegal acts" was unambiguous, its argument on appeal is in direct response to Majestic's extended contention that the plain language of the Plan excludes Weatherspoon from coverage for any of the alleged illegal acts at issue. This Court has recognized that "an appellee may proffer alternative arguments to support the district court's decision without filing a cross-appeal." *United States v. Neal*, 93 F.3d 219, 224 (6th Cir. 1996) (quoting *United States v. Lieberman*, 971 F.2d 989, 997n.5 (3d Cir. 1992)). Thus, the filing of a notice of cross-appeal is not jurisdictional in this case because the Med's argument does not "attack part of a final judgment in order to enlarge [its] rights or reduce those of [its] adversary." *Francis v. Clark Equip. Co.*, 993 F.2d 545, 552 (6th Cir. 1993).

the fact that the parties offer competing interpretations does not dictate a finding that the provision is ambiguous, because the alternative interpretation offered by a claimant "must be a plausible one." *Zirnhelt*, 526 F.3d at 287; *see also Smith v. ABS Indus., Inc.*, 890 F.2d 841, 847 n. 1 (6th Cir. 1989) ("[B]oth parties have offered plausible interpretations of the agreement drawn from the contractual language itself [which] demonstrates that the provision is ambiguous." (alterations in original)).

Majestic argues that the phrase "illegal act" is unambiguous because it plainly includes any act that is contrary to law. To support this interpretation, Majestic focuses on the fact that "illegal" appears in a disjunctive clause with "criminal." According to Majestic, because coverage may be denied for injuries resulting from an illegal *or* criminal act, the term "illegal act" encompasses conduct broader than that included in the term "criminal act." Majestic also relies on the dictionary definition of the word "illegal" as "contrary to or violating a law or rule or regulation or something else . . . having the force of law." (Def. Br. 28.)

However, the Med argues that the term "illegal act" is ambiguous because an illegal act could be limited to violations that result in a citation or rise to a certain level of wrongdoing or could encompass all acts contrary to law. We agree. Particularly in the context of the entire provision, which excludes coverage for injuries resulting from riots, civil disturbances, illegal occupations, and criminal acts, a reasonable interpretation of "illegal act" might not include driving without insurance or driving without a license. *See Bekos v. Providence Health Plan*, 334 F. Supp. 2d 1248, 1256-57 (D. Or. 2004). Thus, we conclude that the language of the Plan is ambiguous as to what level of wrongdoing is required to constitute an "illegal act" for purposes of the exclusionary provision.[5]

---

[5] The hypothetical scenarios posed by the court in *Bekos* are illustrative of the ambiguity inherent in the term "illegal:"

> [T]he "other illegal act" phrase arguably would exclude coverage for injuries to beneficiaries who: (1) trip on a sidewalk while jaywalking; (2) have their cars hit by a semi-truck while driving one mile per hour over the posted speed limit or not wearing a seatbelt; (3) are hit by another vehicle while executing a turn without displaying a turn signal; (4) fall off a ladder while remodeling a house without all relevant governmental permits; (5) are bitten by their dog when they have not yet obtained a dog license; or

*Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142 (2d Cir. 2003), cited by Majestic in support of the district court's conclusion, does not compel a different result. The claimant in *Celardo* suffered injuries after violating numerous provisions of New York's traffic laws, including driving an unregistered, uninsured vehicle, crossing a solid, double-yellow line, and using improper dealer license plates. *Id.* at 144. The Trustees, vested with discretionary authority under the benefits plan, concluded that the claimant's traffic infractions, while "not considered crimes in New York," constituted "illegal acts" for purposes of determining coverage under the plan. *Id.* at 146-47. Reviewing the Trustees' decision under an arbitrary and capricious standard of review, the court of appeals found that "the Trustees' interpretation of the phrase 'illegal acts' was not unreasonable." *Id.* at 146.

Although *Celardo* involved an illegal-act provision very similar to the one at issue in this case, the court of appeals reviewed the Trustees' interpretation of that provision under the deferential arbitrary and capricious standard. In contrast, *de novo* review governs our review of the decision to deny Weatherspoon's claim for benefits. Moreover, the fact that another court has found an interpretation of a similar plan provision to be "not unreasonable" does not dictate a finding that "illegal act" is an unambiguous term, or that BAS correctly interpreted "illegal act" as any act that is "contrary to law." We therefore conclude that the district court erred in finding that "the term 'illegal act' unambiguously includes any act contrary to law."[6]

---

(6) fall into a fire while burning yard debris with no burn permit. A reasonably intelligent person objectively examining the "other illegal act" phrase in the context of the entire exclusion would not expect a denial of coverage for these types of activities. *Bekos*, 334 F. Supp. 2d at 1256-57.

[6]While "any ambiguities in the language of the plan [should] be construed strictly against the drafter of the plan" *Regents of Univ. of Mich. v. Employees of Agency Rent-A-Car*, 122 F.3d 336, 340 (6th Cir. 1997), because we find that the alleged illegal acts at issue did not cause Weatherspoon's injuries, it is unnecessary to determine what effect construing the term "illegal act" in favor of Weatherspoon would have on the ultimate question of whether Weatherspoon was entitled to benefits.

### 2.    Causality

The district court concluded that the Plan's illegal-act provision did not exclude coverage for Weatherspoon's injuries because driving without a license and driving without insurance did not "cause" Weatherspoon's accident and resulting injuries. (ROA vol. 1 at 256.)  As noted above, the Plan excludes coverage for losses "caused by, incurred for or resulting from . . . . [c]harges for . . . an injury or illness arising out of . . . the commission or attempted commission of an illegal or criminal act." (ROA vol. 1 at 77.)  On appeal, Majestic does not dispute that in order to fall within the exclusionary provision the injury must be "caused by" the illegal act.  Instead, Majestic argues that the district court "failed to acknowledge the strong causal connection . . . between the illegal act of driving without a license and a motor vehicle crash." (Def. Br. 33.)

However, the administrative record provides no support for the assertion that driving without a license or driving without insurance "caused" Weatherspoon's accident and resulting injuries.  Instead, the denial letters and other correspondence from BAS indicate that BAS denied Weatherspoon's claims simply because Weatherspoon was "engaged in" an illegal act at the time of the accident.  Further, on appeal, Majestic provides no evidence of a causal connection, alleging merely that "[i]n order to obtain a license, drivers must first pass a test, ensuring that they have at least certain minimum driving skills," making it "highly reasonable that Weatherspoon's lack of a driver's license contributed to his accident." (Def. Br. 33.)

Majestic next relies on *Celardo* to support its argument that the required causal connection is present in this case.  The claimant in *Celardo* argued that no causal link existed between his traffic violations and his injuries.  *Celardo*, 318 F.3d at 147.  Noting that the absence of a causal link "may or may not be true," the court emphasized its limited role under the arbitrary and capricious standard of review.  *Id.*  Suggesting that it might have agreed with the claimant if it were to review the plan administrator's decision *de novo*, the court observed that the claimant had "a decent argument that his placing the dealer plates on the unregistered, uninsured, and uninspected Corvette did

not directly cause his injuries." *Id.* In addition to the different standard of review applicable to the plan administrator's decision in *Celardo*, the claimant in that case committed a traffic violation—crossing a double-yellow line in an attempt to pass another vehicle causing him to lose control of the vehicle—that arguably was related directly to the injuries he sustained when his car subsequently struck a tree. *Id.* In light of these differences, *Celardo* does not require a finding of causality in this case. We agree with the district court that there is an insufficient causal link between Weatherspoon's injuries and the act of driving without a license or driving without insurance.

In sum, even if Majestic is correct that driving without a license and driving without insurance each constitute an "illegal act" for purposes of the exclusionary clause in the Plan, the district court correctly determined that the benefits for which Weatherspoon sought payment did not stem from a loss "caused by" those acts. We therefore affirm the district court's conclusion that Majestic erred in denying Weatherspoon's claim for benefits.

## III.    APPROPRIATE REMEDY FOR ERRONEOUS DENIAL OF BENEFITS

Having concluded that Majestic erroneously denied the claim for benefits, we must address whether the district court ordered the proper remedy. As a remedy for Majestic's improper benefits decision, the district court awarded benefits to the Med. Majestic argues that, even if this Court affirms the district court's conclusion that it erroneously denied benefits, the proper remedy was not to award benefits but to remand the case to the plan administrator for further proceedings.[7] According to Majestic, even

---

[7]The Med argues that Majestic has waived its right to request that the case be remanded for further consideration by failing to raise this argument below. Majestic did not request remand as a form of relief in its earlier pleadings, instead arguing that the district court should uphold the denial of benefits because Majestic's decision was reasonable. (ROA vol. 1 at 16, 115, 149.) However, Majestic raised the argument for remand in its response to the Med's cross-motion for judgment on the administrative record:

> Plaintiff's final argument is that it is entitled to benefits because procedural errors were made during the claims review process. However, even taking this allegation as true, a plan administrator's procedural violations of ERISA does not entitle a claimant to an award of benefits. Instead, the proper remedy is a remand to the plan administrator.

(ROA vol. 1 at 193-94 (citations omitted).)

Thus, Majestic did not waive its right to argue that remand is the appropriate remedy. Although

if the grounds on which Majestic denied the claim were invalid, there is insufficient evidence in the administrative record for the court to conclude that Weatherspoon was "clearly entitled" to benefits under the Plan.

### A.     Standard of Review

An appellate court reviews a district court's choice of remedy in an ERISA action for abuse of discretion. *See Willcox v. Liberty Life Assurance Co. of Boston*, 552 F.3d 693, 703 (8th Cir. 2009) (finding that the district court did not abuse its discretion in remanding the case to the plan administrator for further administrative review); *Zervos v. Verizon N.Y., Inc.*, 277 F.3d 635, 648 (2d Cir. 2002) (reviewing the district court's choice of remedy for the plan administrator's violation of ERISA for abuse of discretion).

### B.     Analysis

Where a district court determines that the plan administrator erroneously denied benefits, a district court "may either award benefits to the claimant or remand to the plan administrator." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006); *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175 (10th Cir. 2006) (stating that a district court has two options after determining that a denial of benefits was improper: "it can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits") (internal quotation marks omitted); *see also* 29 U.S.C. § 1132(a)(1)(B) (establishing the right of plan participants who bring suit pursuant to ERISA "to recover benefits due to him under the terms of his plan").

---

arguments not raised before the district court, including arguments presented for the first time to a district court in a reply brief, generally are considered waived on appeal, this Court has not deemed waived arguments presented for the first time in a *response* brief. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). The rationale underlying this distinction relates to the other party's opportunity to respond. *See id.* In contrast to response briefs where the other party has an opportunity to respond to the argument in a reply, a party "ordinarily has no right to respond to the reply brief, at least not until oral argument." *Id.* Because Majestic raised this issue in its response brief, and thus presented it to the district court in a context in which the Med could have responded, Majestic did not waive its argument that remand is the appropriate remedy.

In *Elliott*, this Court set forth the principles relevant to the selection of a remedy for a plan administrator's erroneous denial of benefits. The court in *Elliott* explained that "where the 'problem is with the integrity of [the plan's] decision-making process,' rather than 'that [a claimant] was denied benefits to which he was clearly entitled,' the appropriate remedy generally is remand to the plan administrator." *Elliott*, 473 F.3d at 622 (quoting *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 31 (1st Cir. 2005)) (adopting the "flexible approach" of the First Circuit and emphasizing the need for district courts to have "considerable discretion to craft a remedy after finding a mistake in the denial of benefits." (internal quotation marks omitted)).

Remand therefore is appropriate in a variety of circumstances, particularly where the plan administrator's decision suffers from a procedural defect or the administrative record is factually incomplete. For example, where the plan administrator fails to comply with ERISA's appeal-notice requirements in adjudicating a participant's claim, the proper remedy is to remand the case to the plan administrator "so that a 'full and fair review' can be accomplished." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 240 (4th Cir. 2008). Courts adopting this position have reasoned that a procedural violation does not warrant the substantive remedy of awarding benefits. *See id.* at 241. Remand also is appropriate where the plan administrator merely "fail[ed] . . . to explain adequately the grounds of [its] decision." *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1288 (10th Cir. 2002). In addition to procedural irregularities, an incomplete factual record provides a basis to remand the case to the plan administrator. *E.g.*, *Miller v. United Welfare Fund*, 72 F.3d 1066, 1073-74 (2d Cir. 1995) (remanding after determining that "[t]he present record is incomplete").

In contrast, where "there [was] no evidence in the record to support a termination or denial of benefits," an award of benefits is appropriate without remand to the plan administrator. *E.g.*, *DeGrado*, 451 F.3d at 1176; *see Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 396 (6th Cir. 2009) (ordering remand to the plan administrator after determining that the record did not "clearly establish[]" that the claimant was entitled to benefits). Thus, where a plan administrator properly construes

the plan documents but arrives at the "wrong conclusion" that is "simply contrary to the facts," a court should award benefits. *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001). Under such circumstances, "remand is not justified" to give the plan administrator "a second bite at the apple." *Id.*

In this case, as the district court found, the problem with Majestic's decision is not that it used defective procedures to arrive at the result, such as failing to provide the Med with notice, but that it arrived at the wrong result. Therefore, an award of benefits is the appropriate remedy in this case. *See DeGrado*, 451 F.3d at 1176. Nonetheless, Majestic argues that Weatherspoon is not "clearly entitled" to benefits—and remand is therefore appropriate—because "no evidence in the Administrative Record supports the conclusion that Weatherspoon was not intoxicated." (Def. Br. 41-42.) However, as discussed above, Majestic is precluded from relying on Weatherspoon's alleged illegal act of driving under the influence based on the express statement in the denial letter that only the illegal acts of driving without insurance and driving without a license provided a basis for denying the claim. *See Kellogg*, 549 F.3d at 828-29; *compare Huntsinger v. The Shaw Group, Inc.*, 268 F. App'x 518, 520 (9th Cir. 2008) (finding no waiver of reliance on a plan provision because the record did not demonstrate that the plan administrator "affirmatively relinquished its right to rely on the . . . exclusion as a basis for denial"). The remaining record evidence related to driving under the influence and driving without a license shows that Weatherspoon is "clearly entitled" to benefits because these illegal acts were not the cause of Weatherspoon's injuries.

Moreover, because Majestic has disclaimed reliance on the DUI charge as a basis for denying coverage, on remand, Majestic—as BAS did in the final decision to deny benefits—could only rely on the acts of driving without a license and driving without insurance to deny Weatherspoon's claim for benefits. However, there are no additional facts to develop or other findings that Majestic as the plan administrator needs to make regarding these charges. Consequently, remand is an inappropriate remedy in this case. *See Williams*, 227 F.3d at 715 ("It is also appropriate to . . . grant . . . benefits without remanding the case where there are no factual determinations to be made."). Because

remanding the case to Majestic would be futile and "would serve no purpose," the district court properly awarded benefits to the Med as a remedy for the erroneous denial of benefits. *See Perry*, 900 F.2d at 965; *Frommert v. Conkright*, 535 F.3d 111, 118 (2d Cir. 2008) (noting that a party is not entitled to administrative remand where remanding would be futile).

Attempting to avoid this conclusion, Majestic argues that it has new evidence of Weatherspoon's blood-alcohol level at the time of the accident. However, this Court is "limited to reviewing the administrative record at the time the plan administrator made its final decision to deny benefits. *Wilkins*, 150 F.3d at 615. Majestic's "final decision" to deny benefits occurred in 2005. Throughout the litigation, Majestic continually has asserted that the decision embodied in the denial letter of November 21, 2005 constituted its final decision regarding Weatherspoon's entitlement to benefits. Accordingly, Majestic cannot now claim that its review is incomplete. *See Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516, 530 (6th Cir. 2003), *overruled on other grounds by Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003) (noting that equitable principles "certainly weigh against [a plan administrator] taking . . . inconsistent positions" in administrative and court proceedings).[8] We therefore conclude that the district court properly awarded benefits to the Med.

## IV.   MAJESTIC'S RULE 59(e) MOTION

### A.   Standard of Review

Although we generally review a denial of a motion to alter or amend a judgment under Rule 59(e) for abuse of discretion, "when the Rule 59(e) motion seeks review of a grant of summary judgment, . . . we apply a *de novo* standard of review." *Wilkins*, 150 F.3d at 613. Because Majestic's Rule 59(e) motion sought review of the district court's

---

[8]Remanding this case also is inappropriate because it would sanction the notion that a plan administrator may deny claims in a piecemeal fashion, testing each potential basis for denying a claim at separate points in the proceedings. Such litigation is contrary to one of ERISA's "primary goal[s]," of "provid[ing] a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *See Perry*, 900 F.2d at 967.

decision to grant the Med's motion for judgment on the administrative record, we review *de novo* the district court's ruling on Majestic's motion.  *See id.*

### B.     Analysis

In its motion under Rule 59(e), Majestic argued that the district court's judgment was based on clear errors of law and that a failure to find in favor of Majestic would result in "manifest injustice."  *See GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (listing clear errors of law and manifest injustice as reasons supporting the grant of a Rule 59(e) motion).  In support of its motion, Majestic submitted the newly discovered results of the blood-alcohol test administered at the time of Weatherspoon's accident.  The district court denied the motion, finding that Majestic could not admit new evidence for the first time during judicial review of the administrative decision.[9]  On appeal, Majestic argues that it did not submit the evidence so that the court could determine whether that evidence supported its denial but, instead, as further support for its argument that remand was the appropriate remedy. Specifically, Majestic contends that "[t]he new evidence merely underscored that remand was the necessary remedy because not only is Plaintiff not 'clearly entitled' to benefits," but the new evidence provided "probative evidence of Weatherspoon's state of intoxication which could be considered on remand."  (Def. Br. 49.)

While Majestic argues that it did not offer the new evidence to convince the district court to uphold the denial of benefits, permitting the district court to consider the new evidence to justify remand to Majestic has the same result—denying Weatherspoon's claim for benefits based on evidence outside of the administrative record.  As noted above, review of a decision to deny benefits is "confined to the administrative record as it existed" at the time Majestic "issue[d] its final decision upholding the [denial] of benefits." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005).  We therefore conclude that the district court properly disregarded the

---

[9]After Judge Breen granted the Med's motion for summary judgment on the administrative record, the case was transferred to Judge Anderson, who issued the order denying Majestic's Rule 59(e) motion.

new evidence of Weatherspoon's blood-alcohol level at the time of the accident. Because Majestic offers no other reason to grant its motion to alter or amend the judgment awarding benefits to the Med, we affirm the district court's decision to deny Majestic's Rule 59(e) motion.

## V.     PREJUDGMENT INTEREST

Majestic also challenges the district court's award of prejudgment interest to the Med.  "Although ERISA does not mandate the award of prejudgment interest to prevailing plan participants, we have long recognized that the district court may do so at its discretion in accordance with general equitable principles."  *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 585 (6th Cir. 2002) (internal citations omitted).  An award of prejudgment interest in the ERISA context is "compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award."  *Tiemeyer v. Cmty. Mut. Ins. Co.*, 8 F.3d 1094, 1102 (6th Cir. 1993) (internal citations omitted).

Majestic's sole challenge to the award of prejudgment interest is that because its decision to withhold benefits "was neither incorrect nor inequitable," the district court abused its discretion in awarding prejudgment interest. However, as discussed above, Majestic erroneously denied Weatherspoon's claim for benefits.  Because Majestic incorrectly withheld benefits, the district court was within its discretion to grant the Med's motion for prejudgment interest.  *See Wells v. U.S. Steel & Carnegie Pension Fund*, 76 F.3d 731, 737 (6th Cir. 1996) (upholding an award of prejudgment interest where the plan administrator "wrongly withheld" benefits).  We therefore affirm the district court's award of prejudgment interest.

## VI.    ATTORNEY FEES

### A.     Standard of Review

This Court reviews a district court's decision to award attorney fees in an ERISA action for abuse of discretion.  *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 529 (6th Cir. 2008).  "[A]n abuse of discretion exists only when the court has the definite and

firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Id.* (quoting *Moon v. Unum Provident Corp.*, 461 F.3d 639, 643 (6th Cir. 2006) (per curiam)).

**B.     Analysis**

ERISA authorizes a district court, in its discretion, to "allow a reasonable attorney[] fees and costs of action to either party" in an action by a plan participant.  29 U.S.C. § 1132(g)(1).  The Sixth Circuit examines the following five factors to determine whether a district court properly exercised its discretion in awarding attorney fees under § 1132(g)(1):

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Moon*, 461 F.3d at 642; *accord Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985) (establishing the five-factor test).  We have emphasized that "[n]o single factor is determinative, and thus, the district court must consider each factor before exercising its discretion" on the issue of attorney fees.  *Moon*, 461 F.3d at 642-43. Further, "[t]his Court has rejected a presumption that attorney[] fees should ordinarily be awarded to the prevailing plaintiff."  *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005).

The district court in this case awarded attorney fees after examining each of the five factors, concluding that all five factors weighed in favor of awarding fees to the Med.**10**  On appeal, Majestic argues that the district court abused its discretion in analyzing all but the second factor, conceding that it has the ability to pay an award of attorney fees.  Because no single factor is determinative, "in reviewing the district

---

**10**Following the ruling on Majestic's Rule 59(e) motion, the case again was transferred, this time to Judge Donald, who heard and ruled on Plaintiff's motion for attorney fees.

court's decision for an abuse of discretion, we must review [its] findings as to each of the five *King* factors." *Moon*, 461 F.3d at 643.

With respect to Majestic's culpability or bad faith, the district court found that Majestic acted culpably in denying the claim for benefits because Majestic was "almost entirely uninvolved in the denial . . . ." (ROA vol. 1 at 27.) Challenging this conclusion, Majestic argues that a "finding of insufficient involvement in a benefits decision is not a finding of culpability," and that the purpose of determining whether a plan administrator exercised its discretion "is to determine the appropriate standard of review, not to determine culpability." (Def. Br. 52.)

Where a plan administrator engages in an inadequate review of the beneficiary's claim or otherwise acts improperly in denying benefits, we have found that attorney fees are appropriate. For example, in *Moon*, the district court determined that the plan administrator acted culpably because it engaged in a selective review of the record, and relied solely on the opinion of its in-house physician who never examined the claimant. *Id.* at 463-64; *see Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 809-10 (6th Cir. 2002). A plan administrator similarly acts culpably when it "ignore[s] overwhelming evidence of [a claimant's] disability" and relies on selective portions of the claimant's medical records to justify its denial decision. *Heffernan v. UNUM Life Ins. Co. of Am.*, 101 F. App'x 99, 109 (6th Cir. 2004) (quoted in *Moon*, 461 F.3d at 643).

In contrast to the plan administrators in *Moon* and similar cases, Majestic erroneously denied benefits to Weatherspoon because the illegal acts it cited in support of its benefits decision lacked a causal connection to Weatherspoon's injuries. Therefore, Majestic's denial of Weatherspoon's claim resulted from its misreading of a Plan provision rather than a selective review of the record or reliance on incompetent medical evidence. Although the district court found that Majestic "irresponsib[ly]" abandoned its fiduciary role, that is not the challenged conduct leading to the erroneous denial of benefits. *See Gaeth*, 538 F.3d at 530 (focusing on the reasons that the plan administrator denied benefits in assessing culpability). Majestic erred in denying

Weatherspoon's claim for benefits, but its erroneous interpretation of certain terms in its plan documents does not constitute culpable conduct for purposes of determining whether to award attorney fees. *See Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 937 (6th Cir. 1996). We therefore conclude that, under the unique factual circumstances presented in this case, the district court erred in weighing the first factor in favor of an award of attorney fees.

The unique facts of this case also mean that an award of attorney fees to the Med would not have a "deterrent effect . . . on other persons under similar circumstances." *See Moon*, 461 F.3d at 642. Awarding attorney fees because Majestic improperly applied the illegal-act exclusionary provision to the particular facts involved in Weatherspoon's claim would not necessarily deter other plan administrators from incorrectly interpreting a similar provision. Moreover, a "deterrence measure is arguably more appropriate" where a plan administrator performs a cursory review of a claim for benefits or bases its denial on unreliable medical evidence. *Gaeth*, 538 F.3d at 532.

The third factor—whether a beneficiary's claim confers a "common benefit" on other plan participants—similarly weighs against an attorney-fee award in this case. Where a claimant seeks benefits only for himself, we generally have found the common-benefit factor to weigh against an attorney-fee award. *See Gaeth*, 538 F.3d at 533. Here, the record does not establish "that any other participant in [Majestic]'s plan was in the same position as [Weatherspoon] . . . or that any other participant would obtain a redetermination of a similarly adverse benefits decision as a result of [the Med]'s success in" obtaining benefits. *Gaeth*, 538 F.3d at 533. The district court therefore erred in concluding that the common-benefit factor weighed in favor of awarding attorney fees.

Finally, the district court found that the relative merits of the parties' positions favored an award of attorney fees to the Med because the Med prevailed in its claim against Majestic. However, because of the numerous closely contested issues involved in this case, the fact that the Med ultimately prevailed does not weigh in favor of an

award of attorney fees.     Although some of Majestic's positions lacked merit—particularly its claim that it was entitled to arbitrary and capricious review—its "position appears no more devoid of merit than that of any other losing litigant." *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1304 (6th Cir. 1991).  Further, none of Majestic's claims appear to have been brought in bad faith.  While awarding fees is justified where a plan administrator attempts to defend a decision that was based either on an incomplete review of the record or unreliable medical evidence, *see Gaeth*, 538 F.3d at 532, under the circumstances of this case, awarding fees to the Med is not warranted.

Based on our analysis of the five factors, we conclude that the district court abused its discretion in awarding attorney fees to the Med.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's award of benefits and prejudgment interest to the Med, but **REVERSE** the award of attorney fees.

---

### CONCURRING IN PART AND CONCURRING IN THE JUDGMENT

---

ROGERS, Circuit Judge, concurring in part and concurring in the judgment. The district court should have used an arbitrary and capricious standard to review Majestic's decision denying the claim at issue; however, Majestic's decision was arbitrary and capricious and thus I concur in affirming the district court's award of benefits and prejudgment interest to the Med.

### I.       Standard for Reviewing ERISA Fiduciaries and Their Agents

Majestic, as a fiduciary with discretionary authority to construe the terms of the Plan, is entitled to have its decisions reviewed under an arbitrary and capricious standard. This court should follow the well-reasoned approach set out by the Tenth Circuit in *Geddes v. United Staffing Alliance Employee Medical Plan*, 469 F.3d 919, 927 (10th Cir. 2006), holding that "[i]f a plan administrator has been allotted discretionary authority in the plan document, the decisions of both it and its agents are entitled to judicial deference." *Geddes* is a sound application of the Supreme Court's holding in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), that arbitrary and capricious review applies where "the benefit plan gives the administrator or fiduciary discretionary authority . . . to construe the terms of the plan." It is undisputed that there was a grant of discretionary authority to Majestic, which generally establishes an arbitrary and capricious standard of review for Majestic's decisions.

Majestic's use of BAS as an agent in exercising its fiduciary duty does not change the applicable standard of review. ERISA, the law of trusts, and the plan at issue here all provide for the use of agents by plan administrators. ERISA provides that "[t]he instrument under which a plan is maintained may expressly provide for procedures . . . (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities . . . under the plan." 29 U.S.C. § 1105(c)(1). This same conclusion is supported by the trust law upon which current ERISA doctrine is based.

The Supreme Court in *Firestone* noted that, "[i]n determining the appropriate standard of review for actions under § 1132(a)(1)(B), we are guided by principles of trust law" and cited the Restatement (Second) of Trusts § 187 (1959). 489 U.S. at 111. Indeed, "ERISA is, in its most important dimension, federal trust law." *Geddes*, 469 F.3d at 925 (quotation omitted). Trust law can thus provide additional guidance in this context as to the permissibility, and limits thereto, of hiring agents. The use of agents by Majestic is supported by the Restatement (Second) of Trusts, which provides that a trustee may delegate authority, and that such delegation is proper "when it is reasonably intended to further sound administration of the trust." Restatement (Second) of Trusts § 171 cmt. Further, in this case the Plan clearly granted Majestic power to hire agents: the Plan lists, as a duty of the plan administrator, the duty "[t]o delegate to any person or entity such powers, duties and responsibilities as it deems appropriate." Such an explicit grant of authority to use agents is also supported by the Restatement. Restatement (Second) of Trusts § 171 cmt. i. Finally, the inclusion of the "as it deems appropriate" language in this grant suggests that the plan administrator was given discretion in the use of this power, in accordance with the Restatement rule that "the trust terms may broaden the degree of the trustee's discretion in matters of delegation." *Id.* Thus any court review of how Majestic used its delegation authority should apply an arbitrary and capricious standard.

Applying that standard, it was not arbitrary and capricious for Majestic to employ BAS or to rely upon BAS as Majestic did when making the final benefits decision at issue in this case. Arbitrary and capricious review of a plan administrator's actions is "highly deferential." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996). Even if, as the district court found, Majestic adopted BAS's recommendation to deny coverage "without engaging in any independent fact-finding," this is not by itself arbitrary and capricious action. Majestic, under the Plan, could reasonably have determined that it was "appropriate" for BAS to have primary fact-finding responsibility for benefits claims and to rely generally on its advice when making final benefit determinations. *Cf.* Restatement (Second) of Trusts § 171 cmt. c (regarding trustees

seeking advice and consultation).  This conclusion is also in harmony with that of the Tenth Circuit in *Geddes*, which held that arbitrary and capricious review was applicable so long as "all decisions were made by [the plan administrator] or by its agent," regardless of which party undertook any specific duties.  *Geddes*, 469 F.3d at 927 n.3. Absent any allegation that Majestic was unreasonable in selecting BAS, that Majestic improperly granted unreviewable authority to BAS, or that Majestic otherwise violated the terms of the Plan in its employment of BAS as an agent, there is no justification for condemning Majestic's use of BAS or for applying a de novo, rather than arbitrary and capricious, standard of review to its benefits decisions.

Cases limiting the role that third parties can play in making benefits decisions under ERISA do not apply to this case.  Indeed, each of these cases stands for the uncontroversial—and presently inapplicable—proposition that plan administrators cannot violate plan terms and retain the benefits of arbitrary and capricious review.

*Sanford v. Harvard Industries*, 262 F.3d 590 (6th Cir. 2001), is not applicable because Majestic made the final determination in this case.  *Sanford* holds that decisions made by third parties unrelated to the plan administrator are not entitled to arbitrary and capricious review.  *Id.* at 596.  The  company in that case, rather than the plan administrator, made the decision to deny benefits.  *Id.*  Similarly, *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 229 (2d Cir. 1995), holds that arbitrary and capricious review would be inapplicable if company executives, rather than the authorized fiduciary, made the benefits decision.  The rule from these cases is not applicable here, where the issue is not whether the correct party made the final decision, but whether that party was too deferential to its agent when making its determination.

*Anderson v. Unum Life Insurance Co. of America.*, 414 F. Supp. 2d 1079 (M.D. Ala. 2006), and like cases do not apply because Majestic retained and exercised its final review authority and because its delegation of some responsibilities to BAS was in accordance with, rather than in violation of, the plan Majestic was administering.  In *Anderson*, the plan administrator entered into agreement with a third party granting that

party an "exclusive right to exercise discretion and control" and providing that the third party was "not . . . [an] agent of [the plan administrator]." *Id.* at 1087 (internal quotation marks and citations omitted). This delegation of complete authority to the third party violated the agreements of the plan in that case and thus triggered de novo review. *See id.* at 1100. In the present case, by contrast, Majestic retained and exercised its final review authority, in compliance with the terms of the Plan. Unlike in *Anderson*, the Plan provided clearly that BAS "does not exercise any of the discretionary authority and responsibility granted to [Majestic]." Before sending the final benefits denial letter, BAS sent the letter to Majestic for approval. That communication indicated Majestic's final authority, as the BAS employee stated that BAS "need[ed] [Majestic] to review and approve before sending [the letter] out."[1] The district court found that Majestic actually did adopt the recommendation of BAS. Further, the final denial letter sent by BAS stated that BAS was "responding to [the] appeal on behalf of the Plan Administrator" and that the decision BAS was reporting was "the Plan Administrator's final decision."

*Shane v. Albertson's Inc. Employees' Disability Plan*, 381 F. Supp. 2d 1196 (C.D. Cal. 2005), and *Culp, Inc. v. Cain*, 414 F. Supp. 2d 1118 (M.D. Ala. 2006), similarly involve delegations of final authority to third parties in violation of plan agreements and are thus similarly not applicable. In *Shane*, a third party made a final benefits decision even though the plan administrator had never delegated any authority to that third party. *See* 381 F. Supp. 2d at 1203. In *Culp*, the plan administrator apparently allowed a third party to make independent decisions, not subject to its own control or ratification and in violation of the plan terms. *See* 414 F. Supp. 2d at 1126-27. The court there refused to infer, "after the fact," that the plan administrator adopted the conclusions of the third party. *Id.* at 1127. This refusal to allow an after-the-fact adoption was important exactly because a concurrent adoption by the plan administrator, such as Majestic's approval in this case, would have meant that the benefits denial was not in violation of the plan documents. Majestic's retention of final control ensured that

---

[1]Majestic apparently provided the approval of the letter quickly; such quick turnaround was necessary because, as the email from BAS to Majestic pointed out, "the deadline to send the letter [was] Tuesday, November 22nd."

it was in compliance with the plan it was administering and thus distinguishes this case from *Anderson*, *Shane*, and *Culp*.

A fixed allocation of responsibilities between Majestic, the fiduciary, and BAS, the agent, was not required for Majestic to retain the benefits of arbitrary and capricious review. ERISA requires that a plan fiduciary retain ultimate control, and ultimate responsibility for, all final decisions. ERISA does not, however, require any particular division of fact-finding duties between the fiduciary and its agent. There is an important difference between a plan administrator who allows an unauthorized third party to make a decision and an administrator who validly employs an agent to assist it in making benefit determinations. The former may lose the benefit of arbitrary and capricious review because the administrator has violated the terms of its plan and committed a breach of its fiduciary duty; the latter is entitled to deferential review exactly because the administrator has committed no such breach. Because Majestic is in the second of these categories, its decision to deny benefits is subject to arbitrary and capricious review.

## II.     Application of Arbitrary and Capricious Review to This Case

Majestic's decision to deny coverage on the bases it cited was, however, arbitrary and capricious because neither driving without a license nor driving without insurance increases any relevant risks to the driver. The Plan excluded "any loss caused by, incurred for or resulting from . . . [c]harges for or in connection with an injury . . . arising out of the participation in, or in consequence of having participated in, . . . an illegal . . . act." The losses in this case were certainly incurred for charges in connection with an injury, so the relevant question is whether the injuries to Weatherspoon arose out of the participation in, or in consequence of having participated in, an illegal act. Majestic, in its final review letter, relied upon two illegal activities when denying benefits: driving without a license and driving without insurance. Neither of these allegations has any relationship to the valid rationale for illegal activity exclusions. Such exclusions in insurance contracts are justified because dangerous illegal activities both increase

insurance costs and have negative social value. *See Monticello Ins. Co. v. Ky. River Cmty. Care, Inc.*, No. 98-5372, 1999 U.S. App. LEXIS 7487, at \*10 (6th Cir. Apr. 14, 1999) ("[I]t is perfectly sensible to exclude coverage for . . . illegal acts to avoid moral hazard problems."). Given this rationale, it would be arbitrary and capricious to conclude, as Majestic in this case apparently did, that any injury occurring while the insured party was engaged in any illegal activity was not covered, regardless of the risks of the illegal activity or the connection between the activity and the injury. Any activity which could fit within even the broadest permissible interpretation of the exclusion clause would have to increase the relevant risks to the insured; otherwise the injury would not arise out of the participation in, or in consequence of having participated in, an illegal act.

A tort analogy suggests strongly that driving without a license is not the type of illegal action that can reasonably be read to preclude coverage. *Cf. Lennon v. Metro. Life Ins. Co.*, 504 F.3d 617, 621 (6th Cir. 2007) (using tort law to inform question of whether a crash caused by drunk driving was an "accident"). Under the majority rule of modern tort law, neither driving without insurance nor driving without a license is by itself even negligent. Fed. R. Evid. 411 ("Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully."); Miss. R. Evid. 411 (same); *Waugh v. Suburban Club Ginger Ale Co.*, 167 F.2d 758, 759 (D.C. Cir. 1948) (lack of a D.C. driver's licence is not relevant to question of negligence); *Myrick v. Holifield*, 126 So. 2d 508, 511 (Miss. 1961) (holding that the lack of a driver's license is "totally irrelevant" to the issue of negligence); R. P. Davis, *Lack of Proper Automobile Registration or Operator's License as Evidence of Operator's Negligence*, 29 A.L.R.2d 963 (2009) ("The overwhelming weight of authority . . . is to the effect that failure to have an operator's license . . . is not evidence of negligence . . . ."). Without evidence, I will not presume that Weatherspoon was not a competent driver simply because he did not have a valid driver's license. That being so, it was arbitrary and capricious for Majestic to deny benefits because Weatherspoon lacked insurance and a license.

It is not enough to say that the insured's participation in the illegal activity was a "cause" of the injury. The fact that Weatherspoon drove, even though he lacked both a license and insurance, was a cause of his injuries. To pick a different example, it would be arbitrary and capricious for an insurance plan to refuse coverage to someone whose injuries were caused by a tire blowout when his car hit a nail lying on the white outside line of the road when he—in violation of traffic laws—drifted onto the white line. *See* MISS. CODE ANN. § 63-3-603(a) (requiring vehicles on roads with three or more lanes to be driven "as nearly as practical entirely within a single lane"). Again, the illegal activity in such a case could as a matter of propositional logic be the cause of the injuries. But it would still be arbitrary and capricious for a plan to determine that the injury in this case arose out of the participation in, or in consequence of having participated in, the illegal driving because the illegal driving did not increase any relevant risk to the insured. Any sensible reading of an illegal-activity exclusion would have to exempt such non-negligent illegal activities even where technical causation is present.

Denying benefits on the basis that Weatherspoon was driving under the influence, in contrast, might not have been arbitrary and capricious, because such illegal activity obviously increases the risk. Majestic cannot rely on this ground, however, because it affirmatively disclaimed such reliance in its final benefits denial letter. Drunk driving is, at least in some circumstances, not only negligent but reckless. *See Lennon*, 504 F.3d at 621. In this case, however, we need not decide whether negligence or recklessness is the appropriate standard—or whether the DUI in this case meets those standards—because Majestic disclaimed reliance on the DUI allegations. In its initial denial, Majestic relied upon the accident report to conclude that Weatherspoon was engaged in an illegal activity when he sustained his injuries. The Med argued in its appeal letter that "an accident report is not conclusive evidence of the commission of an illegal act." In its final review determination, Majestic agreed with this contention, but only with respect to the DUI:

> A pending [DUI] charge on an accident report is not proof of evidence of a commission of an illegal act, however, driving without a license or automobile insurance coverage under Mississippi law, is an illegal act; neither of which require a conviction to be considered illegal.

I agree with the lead opinion that Majestic is thus precluded from relying upon the DUI charge to justify its benefits denial. *See Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 828 (10th Cir. 2008).

Finally, one additional issue not presented in this case is whether a plan administrator can ever avoid plan rules regarding appeal time limits for good cause. Under the Plan, Majestic was required to respond to the claims appeal in this case within 60 days, and thus it had to respond to the appeal before the blood alcohol level tests were concluded. This limit thus could have placed Majestic in the predicament of either having to make a final benefits decision without full evidence or having to violate the Plan rule mandating a reply within 60 days. It may be that plan administrators deserve some deference when deciding how to proceed in the face of such a dilemma. Whatever the correct response is, however, it is certainly not proper to disclaim reliance on the plausibly appropriate ground for benefits denial while claiming reliance on the clearly inappropriate ground.

I thus concur with the conclusion that Majestic's denial of coverage in this case cannot withstand judicial scrutiny. I further concur with Parts III, IV, V, and VI of the majority opinion, and I thus concur in the result.