**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0496n.06

Case No. 19-3001

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 26, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ZACHARY B. SIMONOFF, as Guardian for Fourough Bakhtiar, | ) ) ) | |
|     Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| MEHDI SAGHAFI, et al., | ) ) | |
|     Defendants-Appellees. | ) | |

BEFORE: SUTTON, COOK, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. All family disputes are sad. This one is no exception. But we need not determine who is in the right. All we must decide is whether the district court made a reasonable judgment call when it declined to award attorney's fees in this ERISA enforcement suit. It did, and we affirm.

I.

Dr. Mehdi Saghafi and Fourough Bakhtiar had been married for 55 years when things took a turn. Within a few days of each other, Saghafi filed for guardianship of his wife on the ground of incompetence, and Bakhtiar filed for divorce.

Here's what happened according to Saghafi. His and Bakhtiar's estranged daughter saw a chance to profit from her mother's worsening dementia. In April 2013, she moved Bakhtiar from Saghafi's home to her own, isolating Bakhtiar from the rest of the family. A few days later, she

took Bakhtiar to see an estate lawyer to alter her estate-planning documents. That lawyer refused to proceed because he doubted Bakhtiar's competence to make such decisions. Undeterred, the daughter had Bakhtiar retain a divorce lawyer and had that lawyer file for divorce in Bakhtiar's name.

Back to the undisputed facts. After a year and a half of heated litigation, the probate court appointed Bakhtiar's lawyer, Zachary Simonoff, as guardian of her estate. After Simonoff became guardian, the dispute returned to family court. During the divorce litigation, Saghafi repeatedly attacked the family court's jurisdiction, but never succeeded. The family court rejected Saghafi's arguments and entered a divorce decree, which was affirmed on appeal.

Shortly after the divorce, the family court issued two qualified domestic relations orders (QDROs) requiring Saghafi to sign off on the division of certain retirement funds. He ignored the orders. The family court found Saghafi in contempt and encouraged Bakhtiar to enforce the QDROs in a federal ERISA action. *See* 29 U.S.C. § 1132.

Which led to this case. As Bakhtiar's guardian, Simonoff filed this action for declaratory and injunctive relief. Saghafi answered that the QDROs were void and unenforceable on various grounds. Taking the offensive, he also pled seven counterclaims, including a civil RICO claim.

The district court found the case simple enough. It entered an injunction enforcing the QDROs. And it dismissed Saghafi's counterclaims. Not on the merits, but rather because the district court thought the *Rooker-Feldman* doctrine (which prohibits federal appellate review of state judgments) barred review of the counterclaims. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923). But that was not the end of things.

Simonoff then moved for an award of attorney's fees against Saghafi and his lawyer. *See* 29 U.S.C. § 1132(g)(1); 28 U.S.C. § 1927; Fed. R. Civ. P. 11; *see also Chambers v. NASCO, Inc.*,

501 U.S. 32, 44–46 (1991) (outlining courts' inherent power to assess fees). But the district court was unconvinced that Saghafi and his lawyer had litigated in bad faith or that their positions, even if unsuccessful, were objectively unreasonable. It observed that Saghafi had consistently asserted "that the underlying State Court proceedings were rife with error" and had ignored the QDROs for that reason. R. 93, Pg. ID 1604. And it found his counterclaims "reasonable" given the "unusual circumstances" of the case. *Id.* at 1605. Simonoff appealed. (Saghafi did not appeal the dismissal of his counterclaims.)

II.

In this country, litigants usually pay their own attorney's fees. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). But district courts have wide discretion to make exceptions in appropriate cases. *See Shelby Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 376 (6th Cir. 2009) (ERISA fee-shifting); *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996) (28 U.S.C. § 1927, Rule 11, and inherent power). And for good reason. District courts manage the daily rough and tumble of litigation. They also have factfinding expertise appellate courts lack. *See Guest-Marcotte v. Life Ins. Co. of N. Am.*, 768 F. App'x 357, 362–63 (6th Cir. 2019) (Thapar, J., dissenting). They are best equipped to judge when a party is litigating in bad faith and when awarding fees would help deter misconduct. So we defer to the district court unless it (1) misunderstood the law, (2) relied on clearly erroneous factual findings, or (3) made a clear error of judgment. *See Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 528–29 (6th Cir. 2008).

Simonoff argues that if ever there were a case for attorney's fees, this is it. And he has reason to think that. Saghafi disobeyed the QDROs. His obstinacy got him held in contempt. Plus, Simonoff had to file this federal enforcement action just to get the QDROs enforced.

Still, the question is not whether it is reasonable for Simonoff to be annoyed. The question is whether the district court abused its discretion in not awarding attorney's fees. It did not.

The district court properly considered the five factors this court has flagged as relevant to ERISA fee-shifting motions: (1) the opposing party's culpability or bad faith; (2) the party's ability to satisfy an award; (3) the general deterrent value of an award; (4) whether the party seeking fees was pursuing a "common benefit" for a plan's beneficiaries or aiming to "resolve significant legal questions"; and (5) the merits of the parties' positions. *Shelby Cty.*, 581 F.3d at 376 (quoting *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006)). The district court noted there was no dispute about whether Saghafi could satisfy a fee award (he could) or whether Simonoff was seeking a common benefit for a group of beneficiaries (he was not).

It then considered, and rejected, Simonoff's argument that a fee award "would deter others from disobeying court orders[.]" R. 93, Pg. ID 1603. Simonoff does not challenge this determination. So we take it as we find it. *See Hih v. Lynch*, 812 F.3d 551, 556 (6th Cir. 2016).

That leaves only factors one and five: Saghafi's culpability and the merits of the parties' positions. Of course, the district court sided with Simonoff on the merits. But it rightly declined to award fees for that reason alone. *See First Tr. Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005). In the end, two conclusions tipped the district court's judgment against fee-shifting: (1) it did not think Saghafi had litigated in bad faith and (2) it did not think his positions were completely unreasonable. Neither conclusion was an abuse of discretion.

*Culpability.* Bad faith is often in the eye of the beholder. Saghafi attacked the family court's jurisdiction, defied the QDROs, and fought to the bitter end. To some, this might mark him as a sore loser bent on delay and vexation. But others might see the distress and indignation of an elderly man who believed—maybe rightly, maybe wrongly, but at least sincerely—that his

daughter and her lawyers had teamed up to loot him by taking ruthless advantage of an old woman's dementia and duping the Ohio courts. The district court saw the latter. And it had a front-row seat whereas we have only a cold record. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985); *In re Jackson Masonry, LLC*, 906 F.3d 494, 506 (6th Cir. 2018). Under the circumstances, we cannot say we know better.

*Merits.* Nor has Simonoff convinced us that Saghafi's legal positions were frivolous. Even his defiance of the QDROs. Of course, whenever you defy a facially valid court order, you have some explaining to do. But Saghafi *does* have an explanation. He maintains that the divorce proceedings were a fraud on the court, a sham. And Ohio-law authorities suggest that a judgment procured by fraud may be void. *See, e.g.*, *Ohio Pyro, Inc. v. Ohio Dep't of Commerce*, 875 N.E.2d 550, 556, 2007-Ohio-5024, at ¶ 25; 62 Ohio Jur. 3d *Judgments* § 96 (1985). If so, that makes it "a mere nullity, which [can] be disregarded entirely[.]" *Tari v. State*, 159 N.E. 594, 597 (Ohio 1927). And it is "open to collateral attack at any time" and "in any jurisdiction[.]" *Lingo v. State*, 7 N.E.3d 1188, 1199, 2014-Ohio-1052, at ¶ 46; *see also id.* at 1200, 2014-Ohio-1052, at ¶ 47 ("[A] court may refuse to enforce the void judgment of another court or prevent a party from executing upon the judgment."). In principle, then, Saghafi's contention that the QDROs were void was a reasonable defense to this ERISA enforcement suit.

Simonoff replies that Saghafi's challenge to the validity of the divorce proceedings, even if colorable in theory, had already been rejected by the Ohio courts. Maybe so. But res judicata can always be waived or forfeited. *See* Fed. R. Civ. P. 8(c)(1). By itself, a prior adjudication is not enough to make a legal theory frivolous.

Of course, none of this is to say that Saghafi's defense theory was airtight. But neither was it from the legal equivalent of outer space. We defer not only to the district court's factfinding but

also its assessment of an argument's reasonableness. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 403–05 (1990). And here, we see no abuse of discretion in the district court's choice not to sanction Saghafi for his defenses.

The same goes for Saghafi's counterclaims. Simonoff argues the RICO counterclaim was unreasonable because (he says) a guardianship is not an "enterprise" under the RICO Act. But Simonoff fails to explain why an association that does its dirty work through a guardianship cannot be an "enterprise." If anything, the Act's expansive definition suggests the opposite. *See* 18 U.S.C. § 1961(4); *cf. First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004) (a bankruptcy estate can be an "enterprise"). Right or wrong, Saghafi's legal theory was not frivolous.

Likewise, reasonable minds could debate whether Saghafi's counterclaims breached the *Rooker-Feldman* doctrine. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 291–93 (2005) (clarifying the limited scope of the doctrine); *see also In re Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986) (stating that the doctrine does not bar collateral attacks on state judgments "alleged to have been procured through fraud, deception, accident, or mistake" (cleaned up)). In fact, in dismissing the counterclaims, the district court relied on *Rooker-Feldman* precedent that we have since repudiated. *See Coles v. Granville*, 448 F.3d 853, 859 n.1 (6th Cir. 2006) (acknowledging that *Exxon Mobil* abrogated *Catz v. Chalker*, 142 F.3d 279 (6th Cir. 1998)). As one member of this court has explained, "the Supreme Court has enforced the *Rooker-Feldman* limit on the jurisdiction of the federal courts just twice. The Court's most recent applications of the doctrine suggest that may be it—that, if the party's name is not Rooker or Feldman, or if the case does not present a virtually identical challenge, it is unlikely that the doctrine strips the federal

courts of jurisdiction to hear the claim." *In re Smith*, 349 F. App'x 12, 17 (6th Cir. 2009) (Sutton, J., concurring in part and dissenting in part) (citations omitted).

In the end, the district court made a reasonable judgment call about whether fees were appropriate.  It did not abuse its discretion.

We affirm.